[No. 7792.   Decided June 15, 1909.]

RICHARD H. RAINES, *Respondent*, v. GREAT NORTHERN RAILWAY COMPANY *et al.*, *Appellants*.[1]

MASTER AND SERVANT—RAILROADS—NEGLIGENCE—CONSTRUCTION OF SIDE TRACKS. It is not negligence rendering a railroad company liable to its locomotive fireman, struck by a passing train while cleaning out his engine on a side track, that the side tracks were constructed so near the main line that plaintiff was struck while so engaged, if the tracks are far enough apart to permit trains to pass in safety.

SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. An experienced locomotive fireman, familiar with the locality, who was struck by a passing train on the main line, while he was cleaning out his engine on a side track, is guilty of contributory negligence, as a matter of law, notwithstanding he had received no notice of meeting a train, where, before commencing work, he could have seen the train on the main line had he looked, but went to work in a cloud of steam where he was prevented from seeing or hearing the approaching train, and so close to the main line that he knew he would be struck by any passing engine.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered June 23, 1908, upon the

[1]Reported in 102 Pac. 431.

verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a locomotive fireman by being struck by a passing train. Reversed.

*L. C. Gilman, B. O. Graham,* and *Frederic G. Dorety,* for appellants.

*Elias A. Wright, John B. Hart,* and *Robert H. Evans,* for respondent.

MOUNT, J.—Action for personal injuries. Plaintiff recovered a judgment in the court below. Defendants appeal.

The facts are in substance as follows: Respondent was employed by the Great Northern Railway Company as a locomotive fireman, on freight engines running between Leavenworth, on the east side of the Cascade mountains, and Delta, a station on the west side. Respondent had been engaged in this work about five months, and had been over the road many times. On the evening of November 16, 1907, the respondent was directed to go on engine No. 1801, for a run from Leavenworth to Skykomish and return. He left Leavenworth at ten o'clock in the evening to assist the train over the mountains. His engine at this time was leaking steam around the cylinders. It was one of the largest engines used by the railroad company, and was built for heavy freight work. It had a large fire box. Respondent arrived at Skykomish about daybreak on November 17. He left his engine at the sand house. At about eight o'clock of the same evening he was called for a return trip, and left east for Leavenworth with a train of freight cars. His engine was assisted by a helper engine, and arrived at the Wellington switch at about 6:30 the following morning. It was daylight at that time. As the train came to the station of Wellington, it went on a siding or passing track in order to clear the main line. This station is near the west portal of the Cascade tunnel, which is about three miles in length. It is customary and necessary for the firemen on all eastbound trains to clean their fires at this point in order to get up a good head of

steam before passing into the tunnel. This work was done on the siding on which respondent's train entered, and the engineer would not proceed until the work was done. In order to clean the fires, it was necessary for the fireman to go upon the ground beside his engine and poke the ashes down from that side with a small hoe which was furnished by the company for that purpose. Then he would cross the engine, or go around it, and do the same on the other side.

As soon as respondent's engine No. 1801 went on the siding at Wellington, the helper engine was taken off and proceeded to the coal chute on the opposite side of the main line. Respondent then began to clean the grates of his engine. He first cleaned the right side, and then climbed through the cab to the left side where the main line of the railroad was located. Before commencing his work on the left side of the engine, he walked out beyond the escaping steam and looked to see where the helper engine had gone. At that time an extra freight going west was standing on the main line a short distance beyond the depot. The main track made a curve to the right from the point where respondent's engine stood, to and beyond the depot, so that respondent did not see the extra train headed west standing on the main line. Respondent could have seen it, however, if he had stood back far enough to see around his engine. Respondent had received no notice that another train was to meet them at that point. It was the custom of the railroad company to notify train crews of meeting points for the passing of extra trains. The respondent, thereupon, began to clean the ash pan on the left side of his engine. He could not see ahead on account of the escaping steam. He did not hear the whistles of the approaching train by reason of the rattle of his hoe upon the grates and the noise of the escaping steam. As he was stooping over at his work, the engine of the extra train west struck him upon the back, knocked him down, and injured him.

The distance between the side track and the main line was six feet ten inches, the engine at which respondent was

working projected over the rail two feet eight inches, and the engine of the extra train west projected over the rail one foot ten inches, leaving about two feet four inches in the clear between the passing engines. The evidence shows that some of the side tracks were located as much as fifteen feet from the center of the main line to the center of the side track. The side track where the accident happened was located twelve feet from the center thereof to the center of the main line. This was the minimum distance at which side tracks were constructed on the line of the Great Northern railway. The negligence alleged was, that the main track and passing track were too close together, and that the engine furnished to the respondent leaked steam so as to obstruct his view and prevent his hearing an approaching train.

Several questions are presented in the case, but respondent was so clearly guilty of contributory negligence that we shall not consider other questions. It is perfectly clear that the passing track was far enough away from the main line to permit trains to pass in safety, and this was the object to be attained in constructing the siding. The manner of constructing the tracks was therefore not negligence of the company. *Tuttle v. Detroit etc. R. Co.*, 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114.

While the respondent testified that he was not familiar with the distance between the main and side tracks, he knew of course that the distance was safe enough for the passing of trains for which it was constructed; and while he also testified that no train had before passed along there while he was in the act of cleaning his ash pan, he must have known that he could not stand beside the main line closer than two feet without danger from a passing train. He was perfectly familiar with engines; knew the distance different types overhung the rail, and he must have known that the space between two trains passing at this point would not permit him to stand back from his engine or in a stooping

posture closer than two feet from the passing train. He also testified that he did not know the extra west was at the Wellington depot; that it was the rule and custom of the company to give train crews passing orders; that such orders were communicated to him, and that no such notice was given to him upon this occasion.

The extra west was at the depot, or a little east from it, when respondent's train went upon the siding. If respondent did not know that fact, it was because he did not look. The train was in plain view all the time he was there, except when he was on the ground or in the steam of his own engine. Respondent's engine was standing on a passing track so as to leave the main line clear in order that trains might go by. The object of a meeting notice was to prevent collisions, and to permit trains to go upon passing or side tracks. There was, therefore, no necessity for a meeting notice or order to be given to the crew at that point. The respondent, knowing that his engine was upon a passing track so as to leave the main line clear for other trains, and without looking for the train which was about to pass upon the main line, went into a cloud of steam which prevented him from seeing the approaching train, and while the escaping steam from his own engine together with the noise he was making with his hoe on the grating prevented him from hearing the signals of the approaching train, he stood so close to the main line that he was struck by the passing engine and was injured.

When these facts are considered, in connection with the fact that the respondent was an experienced fireman and had been over this line almost daily for a period of five months, we see no escape from the conclusion that the respondent's own negligence contributed to his injury, and was in fact the direct cause of it. It is no answer to say that respondent's duty required him to clean the ash pan at this particular point, and that the appellant failed to furnish respondent with a reasonably safe place in which to perform that

work. The place was reasonably safe when trains were not passing on the main line. It is not shown that respondent was required to work there when a train was passing, and of course he was not required to do so. Trains were liable to pass at any time, and respondent, like other employees working on or near the main line, was naturally required to keep out of the way and not blindly and carelessly put himself in the way of a passing train.

In the case of *Baker v. Tacoma Eastern R. Co.*, 44 Wash. 575, 87 Pac. 826, where Mr. Baker was attempting to cross a street, and while seeking to avoid trains in front of him was run down by a train coming up behind him, we held that he was guilty of contributory negligence as a matter of law, because he did not look and listen for trains in his rear. And in the case of *Anson v. Northern Pac. R. Co.*, 45 Wash. 92, 88 Pac. 1058, where an experienced brakeman, knowing that an engine was upon the track in the railway yards, and relying upon the custom to ring the bell before moving an engine, walked upon a track in a cloud of steam without stopping to look or listen and was struck and injured without warning, we held he was guilty of contributory negligence which would prevent a recovery. In the latter case we said:

"He also testified that he did not look to see if the engine was coming, because the steam was following him and around him to such an extent that he could not have seen if he had looked; that as a rule at that time the engines around the yard were blowing off more or less steam. It seems to us that a man of experience who would place himself in the position that the appellant did, under the circumstances which he describes, cannot claim that he was exercising any degree of prudence or care whatever; but that, on the other hand, he was guilty of a high degree of negligence."

This language is applicable to this case with as much force as it was to that case. The two cases are parallel in principle. In the *Anson* case a warning, if given, might have prevented the injury. In this case, warnings were given by blowing whistles, but the respondent placed himself in such

a position that he could not see nor be seen by persons in charge of the approaching train, and could not hear the warning signals. He also placed himself on or near the main track of the approaching train without taking any precautions whatever for his own safety. Common prudence would require that he make sure that a train was not approaching, or that he keep himself clear of the main line, or that he request his engineer, who was sitting in the cab of the engine at the time, to notify him of approaching danger. He neglected to do any of the things which it seems a reasonably prudent man would have done. We think, therefore, that the trial court should have sustained appellants' motion for a directed verdict on this ground.

The judgment is reversed, and the cause remanded with instructions to dismiss the case.

RUDKIN, C. J., CROW, CHADWICK, DUNBAR, GOSE, and FULLERTON, JJ., concur.

PARKER and MORRIS, JJ., took no part.