[No. 9021.  Department Two.  December 21, 1910.]

ANNIE BIRRELL, *Appellant*, v. GREAT NORTHERN RAILWAY COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—RAILWAY YARDS—CONTRIBUTORY NEGLIGENCE—EVIDENCE — SUFFICIENCY.  A dining car conductor is guilty of contributory negligence, precluding any recovery for his death, where it appears that he was familiar with the situation in a passenger yard where trains were constantly moving, and in the nighttime left a well known path between tracks, six feet wide from tie to tie, making a safe space of six feet, and took a walk along the edge of a swamp near the outer ties, where the safe space was only two and one-half feet, and was in consequence struck and killed by a switch engine.

Appeal from a judgment of the superior court for King county, Albertson, J., entered May 20, 1910, upon the verdict of a jury rendered in favor of the defendant by direction of the court, in an action for wrongful death.  Affirmed.

*E. P. Dole*, for appellant.

*F. V. Brown* and *Frederic G. Dorety*, for respondent.

MORRIS, J.—Appellant is the widow of J. W. Birrell, who was killed by being struck by an engine of the respondent company, on December 26, 1909, and brings this action to recover for such death.  Upon the trial below, the court directed verdict and judgment for defendant, and plaintiff appeals.

The accident occurred in the railway yards at Seattle. Deceased was a dining car conductor, and had been directed to exchange cars with another conductor named Chapman. They finished checking up their cars, which were lying in the coach yards about one-quarter of a mile south from the union depot, and having received the O. K. of the commissariat office, started north through the yards to reach the exit at the depot. It was then about seven o'clock in the evening, and dark.  As they walked north, they proceeded along what is known as the

[1]Reported in 112 Pac. 362.

six-foot path, being a space between the two main tracks, six feet wide from tie to tie.   In the middle of this path about every one hundred feet was a switch stand, which showed different colored lights at night, indicating to the engineers of incoming and outgoing trains the condition of the numerous switches or tracks running from the main track.

Deceased and Chapman had proceeded but a short distance on this path when a passenger train south bound left the depot and passed them on the left or west track.   They knew that trains were due to arrive and depart at about that time, and they concluded between themselves that this six-foot path was too dangerous, and that it would be safer to turn to the right, cross the east track, and walk north along a path running at the east of this track.   To the right of this track was a marsh, wet and muddy, to which the ground on the east slopes, the path being on the top of the slope and about two feet wide, and the same distance from the track to its outer edge.   From this path the ground slopes sharply to the marsh. The ties extended about a foot or a foot and a half beyond or outside of the rails, so that this path was from six to twelve inches wide outside the ties.   It was not lighted.   They had proceeded about fifty yards, walking side by side, Chapman along the slope and deceased upon the path, when suddenly Chapman says he felt something brush his shoulder and saw Birrell thrown under a switch engine which had approached from the south without warning of any sort, and that he neither heard the sound of its approach nor saw any flash or showing of headlight along the track.   There was testimony to the effect that this path was much used by employees leaving the yards, and that it was regarded as a safe way. Chapman further testified that the switch engine proceeded about two lengths after striking Birrell, when it stopped, and the engineer came back and said he did not see anybody upon the track, and that he was "firing at the time."

Deceased had been running out of Seattle for about three months, returning every fourth day, and remaining some

thirty-two hours before again taking his run. Upon each of these occasions he would walk through this same yard in leaving and returning to his car. It also appeared in the testimony that "there are local trains going in and out, and also two through trains around about that time," and that switching engines "are running all the time, . . . they have to work night and day . . . and are running backwards and forwards there all the time . . . working up and down the yards all day and all night." These are the main facts upon which the court below adjudged deceased guilty of contributory negligence, and upon which the ruling appealed from is predicated.

In determining the question of contributory negligence, it is difficult to announce a rule which will alike fit all cases. As is said in *Keefe v. Seattle Elec. Co.*, 55 Wash. 448, 104 Pac. 774, cited by appellant, negligence is a relative question, and the conduct of deceased must be measured with the line of ordinary prudence. "The facts declare the law in such cases," and "it all comes down to the question of ordinary care under the given circumstances," and "it is only when . . . the situation as to negligence is so plain, clear and unequivocal as to admit of but one answer that the court may declare negligence as a matter of law." *Henry v. Seattle Elec. Co.*, 55 Wash. 444, 104 Pac. 776.

Applying these rules for the measurement of the conduct of deceased, to determine whether or not he acted as a man or ordinary prudence would have acted at such a time, in such a place, with such a knowledge of the conditions confronting him and to be anticipated, we can make but one answer, the same as made by the court below. The courts have said over and over, in deciding cases of this character, and it is the undoubted law, that men who know and appreciate the dangers of their surroundings cannot throw the entire burden of their safety upon others. Nature has given men senses to aid them in self-protection, and when, under such circumstances as we have before us, men refuse to em-

ploy or use such senses in their protection, they are guilty of such contributory negligence as to preclude a recovery in case of injury.  Deceased and Chapman were in a place of comparative safety, upon a hard, dry, smooth-surfaced path, six feet wide from tie to tie, between two parallel tracks, having switch stands in its center line about one hundred feet apart, showing a light—a path familiar to them and doubtless often traveled, the path which naturally would suggest itself as the path to reach the exit.  This is apparent from the fact that they took this path without any discussion as to the proper path to take, and it did not occur to them that it was dangerous until the train passed them on the west track going south.

Chapman testifies that the ordinary engine would extend a foot and a half over the rails; switch engines still further. That would be about the distance of the ties beyond the rails, so that if two trains should pass each other, a person walking on this path would have a safety zone approximately six feet wide, with its center line fixed by the lights of the switch posts. If such a path suggested danger to deceased because of the frequent passing of trains or switch engines on its parallel tracks, what greater safety could there be in the path chosen in its stead, approximately six inches wide beyond the end of the ties which extended from one foot to a foot and a half beyond the rail, giving a space two feet wide on top, then sloping sharply to the water, with no lights to guide one? If there was danger in the six-foot path from passing engines, because of the extension of the engine beyond or over the rails, it is difficult to see how there could be less danger walking on this second path, upon a space two feet wide, with a companion closely upon the right, walking upon the slope to the marsh, and the track closely upon the left, a space that must necessarily be swept by any passing engine; and then walking on with, so far as this record shows, no look to the rear to discover the possible approach of "local trains going in and out, and also through trains around about that time,"

or of switch engines "running backwards and forwards there all the time . . . up and down all day and all night." To voluntarily leave a place of comparative safety (although it is apparent that there was, either night or day, no place of safety in that yard, except to the person using due care and caution) and take a position of apparent danger, has of itself often been declared such contributory negligence as will defeat recovery. Such rule, while authoritative, is not controlling here, as the negligence of deceased is to be attributed to his lack of caution and prudence as he proceeded along the east track, without taking any precaution for his safety, as much if not more than in leaving the six-foot track. Even to a stranger, the presence of the track itself was a warning of danger, suggesting care to escape being struck by passing trains; and it has been often held that one who deliberately walks along a railroad track, without making use of his senses to apprise him of danger, is guilty of negligence. *Denver & R. G. R. Co. v. Buffehr*, 30 Colo. 27, 69 Pac. 582; *Missouri Pac. R. Co. v. Moseley*, 57 Fed. 921; *Gulf C. & S. F. R. Co. v. Wilkins* (Tex. Civ. App.), 32 S. W. 351; *Neal v. Carolina Central R. Co.*, 126 N. C. 634, 36 S. E. 117; *Spaven v. Lake Shore & M. S. R. Co.*, 130 Mich. 579, 90 N. W. 325; *Davis v. Boston & M. R. Co.*, 70 N. H. 519, 49 Atl. 108.

In the *Neal* case, *supra*, the court says:

"We know that it has been held in many cases that a railroad company is liable for damages for carelessly and negligently running over and killing or injuring persons on its road, in which it appeared that the persons killed or injured were also guilty of negligence, and it may not be easy to distinguish some of these from the one under consideration. But there is a distinction . . . . and we think upon examination that it will be found that where the company has been held liable, it is in cases where the party injured was not upon equal opportunities with the defendant to avoid the injury, and in cases where there was something suggesting to the defendant the injured party's disadvantage."

The advantage, if any here, was with the deceased. He knew the switch engines were upon the track, constantly passing up and down. The engineer of a switch engine would have no reason to anticipate any one in the yard, or in such close proximity to the track as to be injured by the passing engine, except the employees of the railway companies, who knew the danger of the situation and would take due care to protect themselves. This distinguishes this case from *Averbuch v. Great Northern R. Co.*, 55 Wash. 633, 104 Pac. 1103, relied upon by appellant. That was a crossing case, where the advantage of the situation was in favor of neither party, and where there was evidence that the plaintiff could not see the approaching train by reason of intervening obstacles, the question of negligence in approaching the crossing being for the jury where each party was equally bound to anticipate the presence of the other. Neither can appellant rely upon *Roth v. Union Depot Co.*, 13 Wash. 525, 43 Pac. 641, 31 L. R. A. 855, as the ruling there, in so far as it touches the question of contributory negligence, is based upon the fact that the injured child was of tender years and not held to the same degree of care as an adult. The same is true as to *Steele v. Northern Pac. R. Co.*, 21 Wash. 287, 57 Pac. 820.

The same reasoning which establishes the negligence of the respondent fixes the negligence of the deceased. If it was negligence for the engineer to run his switch engine without keeping watch ahead to guard against striking pedestrians, whom he had reason to anticipate might be walking upon this path, it was equally culpable and negligent for deceased to walk along the track as he did, without taking heed of the presence of switch engines. The same situation presented itself to both deceased and the engineer. If the one must take heed of men walking along or upon the track, the men so walking must take heed of the switch engines. That one walking along the track in such close proximity to the rails as to be struck by passing trains, without taking precaution for his

safety, is guilty of contributory negligence, is established by
many authorities. *Heffinger v. Minneapolis, L. & M. R. Co.*,
43 Minn. 503, 45 N. W. 1131; *Gulf C. & S. F. R. Co. v.
Wilkins, supra; Tucker v. Baltimore & O. R. Co.*, 59 Fed.
968; *Scott v. Pennsylvania R. Co.*, 130 N. Y. 679, 29 N. E.
289; *Holmes v. Southern Pac. C. R. Co.*, 97 Cal. 161, 31 Pac.
834; *Hill v. Indianapolis & V. R. Co.*, 31 Ind. App. 98, 67 N.
E. 276; *Mizzell v. Southern R. Co.*, 132 Ala. 504, 31 South.
86; *Sharp v. Missouri Pac. R. Co.*, 161 Mo. 214, 61 S. W.
829; *Aerkfetz v. Humphreys*, 145 U. S. 418, and many others.
Thompson on Commentaries on the Law of Negligence,
§ 1796, sums up the rule in this language:

"Standing or walking so near the railway track as to be
struck by a passing engine or train, or as to be drawn under
the wheels by the atmospherical suction made by the train
when in full motion is an act of folly of pretty much the same
nature as standing or walking upon the track itself, and the
courts, with great uniformity, characterize it as contributory
negligence such as will prevent a recovery of damages by the
person so injured, or by his personal representatives if he is
killed."

Such is the rule in this state: *Baker v. Tacoma Eastern
R. Co.*, 44 Wash. 575, 87 Pac. 826, where the deceased when
struck was crossing a track in a locality similar to the one
here, having many tracks upon which engines were constantly
passing and repassing; *Anson v. Northern Pac. R. Co.*, 45
Wash. 92, 88 Pac. 1058, where the plaintiff was walking near
the track and was struck by a passing engine; *Raines v.
Great Northern R. Co.*, 53 Wash. 570, 102 Pac. 431, where a
fireman was cleaning out his engine on a side track, standing
so near the main track that he was struck by a passing engine.
*Woolf v. Washington R. & Nav. Co.*, 37 Wash 491, 79 Pac.
997.

Counsel for appellant says Birrell was not a railroad man,
but a caterer; that he was not a trespasser, nor a licensee, but
was using the railroad right of way as a way of necessity. So
far as the facts before us are concerned, this is immaterial.

We see no distinction in determining which of the above terms correctly defines the deceased. He was there; he knew the local situation; he knew he was in a position of great danger, calling for the exercise of caution and prudence on his part. He did not exercise such caution and prudence, and his failure to do so defeats recovery.

The judgment is affirmed.

RUDKIN, C. J., CHADWICK, CROW, and DUNBAR, JJ., concur.