[No. 9745. Department One. November 28, 1911.]

JULIUS ALBERG, *Respondent*, v. CAMPBELL LUMBER COMPANY, *Appellant*.[1]

RAILROADS — OPERATION — SWITCHES AND FROGS — STATUTES—EF-FECT. Laws of 1899, p. 49, § 1, providing that any person or company operating a railroad is required on or before the first day of October, 1899, to guard frogs and switches, applies to railroads organized after the act went into effect.

SAME — APPLICATION OF STATUTES—"RAILROADS"—PRIVATE LOG-GING ROAD. Laws of 1899, p. 49, § 1, providing that any person or persons, railroad companies or corporations, owning or operating a railroad or railroads in this state, shall guard frogs and switches, applies to a logging road of a mill company used in getting out logs to the mill, and not engaged in public service as a common carrier.

RAILROADS—OPERATION—FROGS AND SWITCHES—LIABILITY—PAR-TIES—STATUTES—CONSTRUCTION. Section 2 of the act of 1899 (Rem.

[1]Reported in 119 Pac. 6.

& Bal. Code, § 8683), requiring railroad companies to guard frogs and switches, which provides that the company shall be liable for any damage received from a failure to comply with the provisions of the act, "such damages to be recovered by the parties entitled to recover as provided" by specified sections of the code, which relate to actions for wrongful death by heirs and representatives, does not limit the right of action to injuries from which death results, the object being only to extend the liability to actions for wrongful death.

MASTER AND SERVANT — INJURIES — CONTRIBUTORY NEGLIGENCE— QUESTION FOR JURY.  An employee in a logging camp, whose foot caught in an unblocked frog while attempting to board an engine, is not guilty of contributory negligence, as a matter of law, the same being a question for the jury, where it appears from his testimony that he was called upon to board the engine, upon which were many men, and that he was looking for a place to get on and failed to see the frog, that the place he sought was not dangerous and was a good place to stand, and the evidence shows that the engine started up without any warning.

SAME—CONTRIBUTORY NEGLIGENCE—DANGEROUS PLACE—PROXIMATE CAUSE.  Where an employee was injured while attempting to board an engine, the engine starting up without warning while his foot was caught in a frog, contributory negligence in seeking to ride upon the cowcatcher, or in walking on the track until he reached the engine, will not preclude a recovery, since the proximate cause was the starting of the engine without warning, and the injury was not caused by dangers incident to riding on the cowcatcher or walking on the track.

Appeal from a judgment of the superior court for King county, Gay, J., entered April 26, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a logger run over by a logging engine.    Affirmed.

*Hastings & Stedman,* for appellant.

*Wm. Martin,* for respondent.

DUNBAR, C. J.—Julius Alberg, a logger employed by the Campbell Lumber Company as second faller, that is to say, assistant to the principal faller, received an injury on December 6, 1906.  He was at that time twenty-three years of age.  After the injury, he brought this action to re-

cover $27,430 on account of said injury. Negligence of the
company was alleged in failing to fill, block, or guard a
frog on the track, and in having incompetent engineers to
conduct the train. Upon the trial of the cause to a jury,
verdict was rendered in favor of the plaintiff for $6,500.
Motions for new trial were made by the defendant, and
plaintiff also. The motions were overruled, and appeal fol-
lowed.

The proof shows that it was the custom for the men
working in the woods to gather at the switch at or near the
place where respondent was injured, and board the engine
or a car for the purpose of being carried to the camp, a
distance of about two miles. On the day the respondent was
injured, he, in company with his fellow workmen and the boss
of the crew, came down to a road which crossed the track
some sixty feet from the switch. The engine came down
from the woods with two loaded cars of logs, and stopped at
the switch. Some one on the engine hallooed at the men.
The respondent, with the other men, including the superin-
tendent, Mr. Matson, started to get on the engine. Mr.
Matson had entire charge of the camp and direction of the
starting and stopping of the train. There were some fifteen
or twenty Japanese working for the company, looking after
the railroad at that time. They usually rode home on a
handcar, but on this day, for some reason not necessary to
be mentioned, the Japanese, not having a handcar available,
began to get upon the engine with the other men for the pur-
pose of riding to the camp. The engine was standing about
four feet from the frog which was the cause of the respond-
ent's mishap, waiting for the men to come from about sixty
feet up the track to get on. When the respondent was about
four or five feet from the engine, and as he was looking for a
place to get upon the engine, his foot slipped in the frog,
which was not protected, and he was unable to get it out.
About that time the engine, without any notice, started to-
ward the respondent who, seeing that he could not extricate

himself from his perilous position, threw his body off the track, and the engine passed over his foot and crushed his foot and leg so that it had to be amputated just below the knee.

This action is based upon chapter 35, page 49, of the Laws of 1899, section 1 of which is as follows:

"Any person or persons, railroad companies or corporations, owning or operating a railroad or railroads in this state, shall be and are hereby required on or before the first day of October, 1899, to so adjust, fill, block, and securely guard the frogs, switches, and guard rails on their roads as to protect and prevent the feet of employees and other persons from being caught therein."

It is the contention of the appellant that, inasmuch as this defendant corporation was not incorporated until the 8th day of April, 1905, which was several years after the passage of the act, the act in terms does not apply to it, and applies only to corporations then in existence. There can be no merit in this contention, as it certainly is not the legislative policy to have the laws reenacted for the benefit of corporations which are created after the passage of the act, or for the benefit of individuals who may be born after the passage of the act, or who may come into the country and be admitted to citizenship after the act. We know of no such construction that has ever been placed upon a general law.

It is also the contention of the appellant that the act in terms does not apply to railroads used in connection with mills, and only applies to common carriers, and that, as it appears that this was exclusively a logging railroad used by the Campbell Lumber Company in getting logs from the woods, and was not a railroad engaged in public service as a common carrier, the act does not apply to it. *Williams v. Northern Lumber Co.*, 113 Fed. 382, among other cases, is cited to sustain this view. But an examination of that case convinces us that it is not in point. It is true that the court

in that case decided that a certain statute of Minnesota did
not apply to railroads other than common carriers; but
while the statute is not set forth, it is evident, from the lan-
guage of the opinion, that it was not such a statute as we
have under construction.    The court, in the course of its
opinion, says:

"It does not come within the language of the statute, be-
cause it is not a railroad corporation; and the proviso in
the statute indicates that the statute is intended to apply
only to corporations of the character to which I have re-
ferred, possessed of franchises, open to public travel or use,
because the proviso is that they shall not be liable for dam-
age during the construction of a new road not open to public
travel or use."

Our statute not only fails to indicate that the law does
not apply to other than railroad corporations which are com-
mon carriers, but it expressly provides that it shall apply
to any person or persons, railroad companies or corpora-
tions, owning or operating a railroad.    The scope of the
act indicates that it was intended to protect workmen or
employees of railroads, whether such railroads were common
carriers or not, and whether they were corporations or in-
dividuals.    The language is so plain and comprehensive that
it is difficult to base an argument upon its construction.
The other cases cited do not sustain appellant's contention.

Again, it is contended by the appellant that, even though
it be conceded that the act applies to railroad companies
other than common carriers, the respondent is not granted
the right to bring an action under this statute, by reason
of the provisions of § 2, which is as follows:

"Any person or persons, railroad companies or corpora-
tions owning or operating a railroad or railroads in this
state, shall be liable for any damage received from a failure
to comply with the provisions of this act; such damages to
be recovered by the parties entitled to recover as provided
in sections 137, 138 and 139 of volume 2 of Hill's Annotated
Codes and Statutes of Washington, being sections 4827,
4828 and 4829, Ballinger's Annotated Codes and Statutes

of Washington." Laws 1899, p. 49, § 2 [Rem. & Bal. Code, § 8683.]

A reference to the sections quoted renders the meaning of § 2 of the statute a little doubtful, but it certainly never was the intention of the legislature, in the passage of the act of 1899, to give the benefit of that act only to the representatives of persons who had been killed, or who were suing for the death of the persons mentioned in those sections. The evident intention was that, in case of death resulting from the negligence prohibited in the act, the representatives of the parties suing should be the representatives provided for in the sections quoted in the act. But, however that may be, it is not material to the determination of this case, for the law, in § 1, imposes a duty upon the appellant, and prescribes, in effect, that the omission of certain acts shall constitute negligence on its part. That would be sufficient in any event for the respondent to base an action on for negligence on the part of the appellant. If the act of negligence was proven, the case would stand just the same as though the act, or omission of the act, was negligence at the common law.

The main contention in the case is that the respondent was guilty of contributory negligence in attempting to get upon the engine under the circumstances proven. In discussing this phase of the case, it will be necessary for us to notice only the testimony of the respondent, and that in substance is as follows:

"A. When we got to the road the engine was up at the switch, and somebody called for us to go up there and to get on. Q. About how far was it from where you were standing when they called for you to go and get on the engine? A. About sixty or seventy feet, I think, and, of course, we walked up that way, and as I came pretty close to the engine I stepped in that frog there and I was looking to get on the engine because there were lots of men on the engine, and I was looking to get on the foot board, because there was a pretty good place to stand on, and lots of places

were taken up by the other men on the engine, and when I was caught in the frog, about the same time the engine started up and it was close by me and I could not get out of the way, so I turned round and my foot was in there, and the engine ran over my foot and that is about the way it happened. Of course, after that they picked me up and took me down to the camp."

The testimony shows also that no bell was rung, or any warning given to anybody that the engine was about to start; that the foreman, Matson, was with the respondent, and was trying to get up on the engine at the same time; that the engine was started by a young boy, a son of the superintendent of the road, who had no knowledge of the engine and no discretion in regard to such matters. The respondent was called and recalled in cross-examination and redirect examination many times, but the proof was substantially as we have indicated.

It is claimed by the appellant, and the record shows, that the judge who tried the cause expressed grave doubts of the right of the respondent to recover under the circumstances shown by the proof, but said that he would submit the case to the jury. The court being in grave doubt as to whether the respondent was guilty of contributory negligence was the best of reasons for submitting it to the jury.

The appellant strongly contends that the respondent was attempting to get upon the cowcatcher for the purpose of riding into camp, and that this was gross negligence. It appears from the testimony of the respondent that he was attempting to get upon a platform which, so far as we are able to ascertain from the testimony, may have been attached to the cowcatcher, which was attached to the engine; but he testifies that it was a place where he could stand, and where he could hang on, and that it was not a dangerous place.

But, even conceding that riding on the cowcatcher was such an act of negligence as would preclude a recovery for injuries caused by dangers incident to riding on the

cowcatcher, that principle is not applicable to this case; for such dangers were not the cause of the accident, proximate or otherwise. The proximate cause of the accident unquestionably was the starting of the engine without notice, while the men gathered there were attempting to get upon the engine.

The case strongly relied upon by the appellant, viz., *Birrell v. Great Northern R. Co.*, 61 Wash. 336, 112 Pac. 362, was where an accident occurred by reason of the perils of the place which were the actual cause of the injury. A dining car conductor left a well-known path, between tracks, six feet wide from tie to tie, and took a walk along the edge of a swamp near the outer ties where the space was only two and a half feet, and was in consequence struck and killed by a switch engine. It will be seen that the principle governing that case was altogether different from the principle governing the case at bar, where the safety or nonsafety of the cowcatcher had no remote influence upon the accident.

It is also contended by the appellant that it was contributory negligence for the respondent to run or walk the distance that he did, which was sixty or seventy feet, on the track or inside of the railroad tracks. But the result in this case would have been the same if the respondent had approached the track at the point where his foot was caught in the frog, because no injury happened to him by traversing the road back of that point; and it seems from all the testimony that it was necessary for the men to go on the track at least that short distance from the engine.

Many cases are cited by both appellant and respondent in support of their respective contentions, but the law in relation to the duties of the master, and the correlative duty of the servant in regard to contributory negligence, is so well understood that the citing of cases is of very little aid to the court. The important question is not what the law is, but whether the facts in the particular case bring it within the provisions of the law as understood. Under all the cir-

cumstances of this case, we are unable to say that the action
of the respondent in attempting to board this engine, under
the circumstances shown by the respondent's testimony, was
contributory negligence as a matter of law.  On the con-
trary, it was a case where it was the peculiar province of
the jury to determine that question.

.No error was committed by the court in the giving or
refusing of instructions, and the judgment is therefore af-
firmed.

PARKER, MOUNT, GOSE, and FULLERTON, JJ., concur.