[No. 9834.  Department One.  April 8, 1912.]

FLORA SMITH, *Respondent*, v. NORTHERN PACIFIC RAILWAY
COMPANY *et al., Appellants*.[1]

RAILROADS—CROSSINGS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR
JURY.  Whether a pedestrian at a city railroad crossing was guilty
of contributory negligence is for the jury, where it appears that
there were seven tracks to cross, that he had crossed all but one
safely and was waiting in a ten-foot space between tracks for a
train to pass, that a train on a track a little ways back was also
passing, both making the usual noises, that the train which struck
him had been on another track, passing over less than two hundred
feet from him, and was running slowly backwards without any
lookout or signals of its approach, and he was not standing on the
track but where he might well believe that he was in the safety
zone.

RAILROADS—CROSSINGS—NEGLIGENCE—INSTRUCTIONS.  In an action
for the death of a pedestrian run down at a city railroad crossing
by a backing train without any lookout or signals of its approach,
it is misleading to instruct the jury that it was for them to say
what measures ought to have been adopted for the protection of
pedestrians crossing the street, regardless of the negligence charged
in the complaint, and it is reversible error where no limitations
thereon were elsewhere made in the instructions, the issues were
only generally defined, and the jury were not told to confine their
inquiries to the acts of negligence alleged.

SAME.  In such a case, in charging that there is a presumption of
due care on the part of the deceased, the jury should not be in-
structed that the presumption could only be overcome by "positive"
evidence to the contrary.

SAME.  In such a case, it is error to give a general instruction as
to the common law duty of a railroad company to give notice of its
approach to a city crossing, without accompanying it with the ex-
ceptions and modifications applicable to the concrete facts of the
case or to the limitations imposed by the allegations in the com-
plaint.

Appeal from a judgment of the superior court for Lewis
county, Rice, J., entered June 16, 1911, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
the death of a pedestrian at a railroad crossing.  Reversed.

[1]Reported in 122 Pac. 595.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellants.

*Gus L. Thacker* and *Hayden & Langhorne,* for respondent.

FULLERTON, J.—This action was brought by the respondent to recover for the death of her husband, William H. Smith, who was killed while crossing the appellant's railroad tracks in the city of Centralia. Third street, in the city of Centralia, extends east and west, and is crossed at practically a right angle by some seven different tracks of the railway company. Numbering the tracks from the west to the east, the distance measured from the outside of the closest rail of the one track to the outside of the closest rail of the other between 1 and 2 is 50 feet; between 2 and 3, ten feet; between 3 and 4, 4 and 5, and 5 and 6, nine feet. The several tracks are connected with cross-overs at various places south of the street, enabling trains to pass from one track to another. Third street at this point is sixty feet in width, and is one of the principal thoroughfares connecting the east and west portions of the city. There is a sawmill located near the crossing, and many of its employees use the street in going to and from their work. A watchman's shanty is located to the west of track 2; the watchman going on duty at 7:00 o'clock a. m. No watch is kept prior to that hour, notwithstanding the principal use of the street by footmen seems to be made before that hour. Centralia is headquarters for several train crews, included among them being gravel and work trains. The railway company use the tracks crossing this street in connection with its switch yard; and between 6 and 7 o'clock in the morning, the crews are busy making up trains, badly congesting the crossing during this hour.

The respondent's husband at the time of his death was a policeman of the city of Centralia. He resided east of the railway tracks, and was required to report for duty at the police station, which was west of the tracks, at 7 o'clock in

the morning.  Smith was killed on the morning of December
23, 1910.  He left his home shortly after 6 o'clock, and
proceeded westerly along Third street across the appellant's
railway tracks, and succeeded in passing them all in safety
until he reached track No. 2.  Here he met a slowly moving
gravel train pulling out from the switching yard, and stopped
between tracks numbered 2 and 3, waiting for the train to
pass.

Shortly before this, a road engine, in the cab of which
was a conductor, engineer, fireman and brakeman, left the
coal bunkers south of the street, and proceeded north on
track 4 to a cross-over leading to track three, where it
passed over to that track, reaching the track at a point
some 158 feet south of Third street, and probably 180 feet
south of where Smith was standing.  It was going back-
wards and carried no lights visible to one standing in the
direction in which it was going, nor was a lookout maintained
on the tender, and the respondent's witnesses testified that
it rang no bell.  As it approached near Smith, it was seen
by a person who had ridden down on the gravel train and
dropped off on reaching Third street.  This person ob-
served that Smith was standing too close to track 3 to allow
the approaching engine to pass him, and thinking to warn
him, called out to him.  Smith, however, instead of turning
towards the engine, turned towards the person speaking, and
was at that instant struck by the engine, knocked down and
killed almost instantly.

On the trial, at the conclusion of the evidence, the ap-
pellant moved for an instructed verdict in its favor on the
ground, among others, that the death of Smith was caused
by his own negligence.  The trial court denied the motion,
and submitted the question to the jury.  The jury returned
a verdict for the respondent, and from the judgment entered
thereon the railway company appeals.

The appellant first contends that the court erred in re-
fusing to grant its motion for an instructed verdict in its

favor. It is argued that, if it be conceded that the appellant was negligent in the manner in which it operated the engine which killed the deceased Smith, that Smith was guilty of such negligence directly contributing to his death as to preclude any recovery therefor.

But we think the question whether the deceased was negligent was properly for the jury. It appears to us that the facts furnish him with a large measure of excuse for failing to observe the approaching engine. Had he observed it when it first began to move in his direction he would have seen that it was on another track from that on which it finally approached him. It turned into the latter track at a distance less than 200 feet from where he was standing. It approached him moving slowly, the engineer says at the rate of about three miles an hour. It was running backwards, displaying none of the visible signals one usually expects to see on an approaching engine. At the time of its approach, one train was passing on a track immediately in front of him, and another one on a track but a little ways behind him, each making "the usual noises incident to their operation;" thus tending to prevent him from hearing the approaching engine. Moreover, he was not standing upon, but to one side of, the track on which the engine approached him. True, he did not stand far enough to one side, but the margin of safety between trains passing on the tracks between which he stood was small, and he may well have believed he was within the safety zone. Taking the situation as it stood we think it was for the jury to say whether or not his acts constituted contributory negligence, and that their finding on the question is conclusive upon this court.

The cases of *Baker v. Tacoma Eastern R. Co.*, 44 Wash. 575, 87 Pac. 826, and *Birrell v. Great Northern R. Co.*, 61 Wash. 336, 112 Pac. 362, are not parallel cases to the one at bar. In the first of these, the facts surrounding the accident were stated by the court in the following language:

"It appears that, while the engines were ringing their

bells and blowing off large quantites of steam, and when one of the engines of the Northern Pacific was on the track in front of him and another had passed up along towards the west, probably fifty or sixty feet, and another engine was coming towards him, and other engines were on the tracks in the immediate vicinity, Mr. Baker came diagonally across the street crossing, his attention riveted upon the engines which were coming towards him; that at the time he was crossing the track upon which he was killed, he had his back towards the west, or his left side and back towards the west, as he went in the diagonal direction, when the logging train backed on him and threw him down onto the south rail of the track and ran over and killed him."

In the second case, it appeared that the person killed, for his own convenience left a place where he could have walked with safety and took a narrow path close to a track over which he knew engines and cars were likely to pass at any time, and proceeded on his way without giving any heed to his situation. In each of these cases, the court might well say that the person killed negligently contributed to his own death; but from the facts in the case at bar no such certain deduction can be drawn. There is room for two opinions on the question whether the person killed was negligent in not failing to see the approaching engine; and this being so, it was for the jury to say whether he was or was not negligent.

The court gave to the jury the following instructions:

"The plaintiff brings this action against the defendants for the death of her husband asking damages in the sum of $25,000, and alleging that he was killed on the 23rd day of December, 1911 through the carelessness and negligence of defendants in the operation of its locomotive engine on the railway tracks at Centralia. The defendants deny any negligence on their part and allege that the husband of the plaintiff, William H. Smith, came to his death through his own negligence in and want of ordinary care and caution while crossing or walking along the tracks of the defendant and in attempting to cross said track without looking or listening for engines or trains. The plaintiff denies any negligence on the part of the deceased William H. Smith."

"The determination of what are proper signals or warnings of the approach of a train to the crossing in question is a matter entirely for the jury to decide. It is incumbent upon you, gentlemen, to find what measures ought to have been adopted by the railway company and by the defendants in this case to guard against danger to travelers; and in determining these questions, you should consider the character of the crossing, the populousness of the city, the frequency of passage over the crossing and all other circumstances which surround the case, and after careful consideration of the same, you should determine whether in view of all the circumstances, the defendants were careless and negligent in failing to give signals of the approach of a locomotive to the crossing, or in failing to keep a proper look out. If you find that they failed to give signals or to keep a proper look out; and if you find that the defendants were careless, and as a proximate result of such carelessness the husband of plaintiff was killed, then, the plaintiff, in the absence of proof of his contributory negligence, is entitled to recover damages.

"The presumption that 'the person killed by a moving train or engine was careful is a substantial fact that you must take with you to your jury room, and this presumption cannot be removed except by positive evidence to the contrary, which evidence must be preponderating and overcome the presumption of care on the part of the deceased. This presumption that the deceased was using due care must be considered by you as evidence in the case and must be over-balanced by stronger or more convincing evidence before you can find that deceased contributed to his own injury by his own negligence.

"I instruct you that it is the common law duty of those in charge of an engine or train of cars, for the non-performance of which the railway company is responsible, when approaching a public crossing, to give notice of their approach by all reasonable warnings, such as by blowing a whistle, ringing a bell, signal lights, or by such other devices as may be sufficient to give timely warning to travelers of their approach, so as to afford time for all approaching to stop in a place of safety, or if on the track, to get out of danger. Besides giving warning of their approach they are bound, if necessary, to use all usual and reasonable means for preventing collisions with persons using the crossing."

It is objected to the second of the instructions as above set out that it did not sufficiently limit the inquiry of the jury; that it left it for them to say what measures ought to have been adopted for the protection of pedestrians crossing the street regardless of the fact whether the measures they might deem necessary were included within the acts of negligence charged in the complaint, or were shown by the evidence.    In other words, the jury were led to believe that the question as to proper protection was one entirely of fact instead of a mixed question of law and fact.    The instruction, we think, must be conceded to be faulty in the respects complained of.    It would not necessarily be fatally so were there elsewhere in the instructions some limitations put upon the broad doctrine announced, but we are unable to find any such limitation.    The first paragraph quoted from the charge contains all that is said by the court concerning the issues, and nowhere are the jury told that in making up their verdict they must confine their inquiries to the acts of negligence charged in the complaint and shown to exist by a preponderance of the evidence.    The charge of the court was thus inaccurate and too broad, and is erroneous because tending to mislead the jury.

The third paragraph of the instruction is complained of because of the use of the word "positive."    It is argued that the jury must have understood therefrom that some direct statement of a witness to the effect that due care was not exercised by Smith was necessary in order to overcome the presumption that he was exercising due care at the time of his death; whereas the rule is that the presumption may be overcome by the inferences that arise from the facts and circumstances surrounding the occurrence.    The instruction is subject to criticism, although perhaps not to the extent of that made by the appellant.    If it is to be repeated at another trial, the objectionable word should be omitted.

To the last instruction it is also objected, we think justly, that it is too general.    The duties of a railroad company on

approaching a crossing with its trains vary as the circumstances vary. What might be reasonable notice of the approach in one instance might be wholly inadequate in another, and what things are absolutely necessary to constitute warning in one instance might properly be altogether omitted in another. Any general statement of the rule is therefore apt to be misleading when applied to a concrete case unless accompanied with the exceptions or modifications applicable to the particular case. The vice of the instruction in question is that it does not contain these modifications, nor did the court elsewhere state them to the jury. The jury were left to apply the general rule stated without regard to the question whether the act of commission or omission on the part of the defendant which was thought to constitute negligence was or was not charged in the complaint or shown to exist by the evidence, and for this reason we think the instruction erroneous.

For the errors noted, the judgment appealed from is reversed, and a new trial awarded.

Gose, Mount, and Parker, JJ., concur.