DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH

(Continued from Volume 44)

## DAVIS v. DENVER & RIO GRANDE R. CO.

No. 2608.  Decided July 21, 1914 (142 Pac. 705).

1. MASTER AND SERVANT—DEATH OF SERVANT—RAILROAD EM-
   PLOYÉ—CONTRIBUTORY NEGLIGENCE—WALKING ON TRACK. Where
   a railroad employé was killed at night while walking on the
   track, by a train of gondola cars approaching without lights,
   and the track was the only feasible route for him to take, he
   was not guilty of contributory negligence as a matter of law
   in walking on the track, on the theory that it in and of itself
   was a warning of danger. (Page 6.)

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT OR
   LAW. The court cannot pass on the question of negligence or
   contributory negligence as a matter of law, unless the ques-
   tion is free from doubt, and it appears, considering all the
   evidence and the inferences that may be deduced therefrom,
   that reasonable men would not arrive at different conclusions
   thereon.[1]  (Page 8.)

3. MASTER AND SERVANT—DEATH OF SERVANT—RAILROAD EMPLOYÉS
   — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether
   decedent, a railroad employe, who was killed by a train at
   night while walking on the track, looked and listened before
   going on the track held for the jury.  (Page 8.)

4. DEATH—WRONGFUL DEATH—PRESUMPTION OF DUE CARE—IN-
   STRUCTIONS. An instruction that there is a presumption of law
   that every man exercises due care for his own safety when in
   a place of danger, and that deceased did so at the time and

---

[1]Newton v. O. S. L. R. Co., 43 Utah 219; 134 Pac. 567.

Vol. 45—1

place when and where he met death, so that plaintiff was not required to prove affirmatively that deceased looked and listened for a train, the presumption being that he did so, and that the burden of proof that he did not was on defendant railroad company, which was bound to establish that fact by a preponderance of the evidence, *held* proper. (Page 9.)

5. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE. An instruction that where a person injured has proximately contributed to the injury by his want of ordinary care, so that but 'for such want of ordinary care on his part the injury would not have been done, and that contributory negligence is such that except for it deceased would not have been injured, was proper. (Page 11.)

6. JURY—RIGHT TO JURY TRIAL—DEMAND—PAYMENT OF FEES— OBJECTIONS BY ADVERSE PARTY. Const. Art. 1, Section 10, provides that the jury in civil cases shall be waived unless demanded, and Comp. Laws 1907, Section 3129, declares that a jury must be demanded in writing prior to the setting of the case for trial, or within such reasonable time thereafter as the court may order, or orally in open court at the time of such setting, and the party demanding a jury must, at the same time, deposit with the Clerk the sum of five dollars. *Held*, that such provisions are not for the benefit of an adversary, and hence, where a jury is in fact present, so that the trial may forthwith proceed without delay, the adverse party cannot successfully object to a jury trial, on the ground that a jury has not been demanded and the jury fee paid in the precise manner and at the precise time prescribed by the statute, but the court in its discretion may waive an untimely demand or payment of the fee, and hence the fact that the jury fee was not paid until a few minutes before the case was called for trial, a jury being present, was not a valid ground of objection by the adverse party to a trial by jury.[3] (Page 12.)

Appeal from District Court, Fourth District; *Hon. A. B. Morgan*, Judge.

Action by Elijah Davis, as administrator of the estate of Leonard Davis, deceased, against the Denver & Rio Grande Railroad Company.

Judgment for plaintiff. Defendant appeals.

---

[2]*Evans* v. *O. S. L. R. Co.*, 37 Utah 431; 108 Pac. 638; Ann. Cas. 1912 C. 259.

[3]*Ogden Valley, etc., Co.* v. *Lewis*, 41 Utah 183; 125 Pac. 687.

Appeal from Fourth District.

AFFIRMED.

*Van Cott, Allison & Riter* for appellant.

*A. C. Hatch* and *A. L. Hoppaugh* for respondent.

FRICK, J.

This action was brought by the father as administrator to recover damages for the death of his son Leonard Davis, which, it is alleged, was caused through the negligence of appellant.

The facts shown by respondent's evidence, in substance, are as follows: On December 2, 1912, the deceased was employed by the Utah Copper Company at Bingham Canyon, Utah. That company then owned and was operating a machine. shop which was located in what is called Bingham Canyon, and the appellant owned and operated a railroad consisting of several tracks near and along said machine shop. The Utah Copper Company also owned and operated several railroad tracks, some of which were used in taking engines to and from the shop. The foregoing railroad tracks, it appears, were laid along a rather steep hillside, so that on the one side of the tracks was a steep ascent or bluff, while on the other was a somewhat abrupt and precipitous decline into the canyon below. The ground, however, where the tracks were laid was made level. When snow fell which, in the winter season, was somewhat frequent, it was shoveled from the tracks and piled up along the sides thereof. It was the duty of the deceased on the night in question to keep alive several, what were called, small dinkey engines by supplying them with coal so as to keep the fires going to prevent freezing. The engines, on the night in question, were standing upon the Utah Copper Company tracks, and about one hundred feet distant from the machine shop, and the deceased was required to walk that distance in the performance of his duties as aforesaid in going from the machine shop to the engines. When he had fired up the engines it was his duty to report to his superior, who was in the machine shop, and from him receive further orders. The night in question was very dark, and the atmosphere in the canyon surrounding

the machine shop was also filled with smoke from the numerous engines operating in the vicinity, and the weather was quite cloudy. Between seven-thirty and seven-forty-five on the evening aforesaid one Whitehead, a witness for respondent, saw the deceased step down from one of the dinkey engines, and after doing so saw him walk towards the tracks of the appellant carrying a lighted lantern. When the deceased had reached the tracks he stopped a moment, then stepped onto the track and walked thereon towards the machine shop. The witness then turned his head a moment, after which he again looked in the direction where he last saw the deceased, and at that moment saw his lantern fly into the air, and also saw for the first time a train of cars passing on the track the deceased was walking on. The witness said that the night was so dark that when he saw the deceased leave the dinkey engine and walk towards and on the track he could not see his body, but by the light reflected from the lantern he could discern that his legs were moving, and that he knew it was a man. The witness did not know that it was the deceased when he saw him go upon the track, but after he had been run over and killed by the train, he saw who it was. The train which ran over the deceased was owned and operated by appellant. It consisted of about fourteen cars of the gondola type, and the cars were being pushed backwards. The train, in approaching where the deceased was killed, had passed over a high bridge, which was about 700 feet distant from where the accident occurred. There were no lights on the rear end of the train, nor was there any one keeping a lookout. The witness Whitehead was standing only a few feet from the machine shop, and near where the train was being operated, but he did not see it, nor did he hear the sound of a whistle or bell, nor did he hear any noise of the train approaching. Other witnesses who were in the vicinity where they could have heard the whistle and bell also testified that they heard neither, but neither Mr. Whitehead nor the other witnesses were willing to swear or state positively that the whistle or bell may not have been sounded by the train in approaching the place where the accident occurred. The testimony also showed

that the track on which the deceased walked at the time was almost constantly used both day and night by a large number of the employés of the Utah Copper Company in going to and coming from the machine shop, and that it was also used by others, and that such had been the custom at the time of and for a long time before the accident; that the night was so dark that one could not see an approaching train or cars without a headlight for more than "twenty to thirty" feet. One witness said that one with a lighted lantern could not see cars approaching for a distance greater than ten feet because the rays of the lantern would blind the one who carried it and increase the gloom in the distance. A locomotive engineer also testified that there were a number of engines that were almost constantly whistling and making noises in the vicinity of the machine shop. In speaking of those engines he said:

"When they come down here and couple onto a string of cars and get a signal, and they whistle in answer to the signal and go on up the hill; then they come down to the yard; they whistle again for the yard. A man that wasn't a railroad man or well acquainted with the position of the different engines in the yard might get confused with regard to those whistles; a whistle here, a whistle there, a whistle over on the hill where the engineers is working, it would be hard for him to tell which engine was whistling unless he was a railroad man—then possibly he could figure it out."

There was also testimony to the effect that on the night in question the snow had been shoveled off the tracks and "piled up" along the sides thereof. One witness said:

"There was irons piled between the tracks so it would prevent them (the pedestrians) from walking there (between the tracks) without having to walk on the tracks because there was big irons of all kinds that occupied practically all that ground."

It also appeared that there were no lights outside of the machine shop on the night in question; that the men were working on some boilers in the shop, and in hammering the iron or steel plates made considerable noise; that there were also hissing noises caused by escaping steam from the engines

in the vicinity of the machine shop. There was also evidence to the effect that in going from the machine shop to the dinkey engines and in coming back to the shop again the only practical way open for the deceased was to walk on the track where he was killed.

Upon the part of appellant there was much evidence, some of which was in direct conflict with the statements here outlined. The jury were, however, the sole judges of the facts and of the credibility of the witnesses, and hence it could subserve no purpose whatever for us to set forth any of the evidence produced on behalf of the appellant.

When both sides had rested appellant moved for a directed verdict "on the ground that the deceased was himself guilty of negligence as matter of law," in the particulars specified in the motion. In referring to the question raised by the motion, counsel, in their printed brief and argument, say:

"Among other things we claimed that the deceased was himself guilty of negligence as a matter of law in failing to look and listen for approaching cars. In this connection we desire to call attention to the following cases, where the courts held that the deceased or injured party was guilty of negligence as a matter of law in failing to ascertain the approach of trains."

In support of the foregoing statement counsel cite no fewer than fifty-two cases decided by various state and federal courts. We shall not pause here to review those cases, or any of them. It must suffice to say that many of them refer to accidents occurring on public crossings, and those come directly within the doctrine announced by us in *Wilkinson* v. *Railroad,* 35 Utah, 110; 99 Pac. 466; *Bates* v. *Railroad,* 38 Utah, 568, 114 Pac. 527, and *Rogers* v. *Railroad,* 32 Utah, 367; 90 Pac. 1075; 125 Am. St. Rep. 876. Others of the cited cases come within the principles which controlled the decision in *Pratt* v. *Light & Ry. Co.,* 38 Utah, 500; 113 Pac. 1032. Further, a number of the cases cited come within the rule that, ordinarily, at least, it constitutes negligence *per se* for a person who is walking along or between railroad tracks in a safe place to leave said safe place and, without cause therefor, go onto the track and walk

thereon when he knows that a train or cars may pass over such track most any time. The case of *Birrell* v. *Great, etc., Ry. Co.,* 61 Wash. 336; 112 Pac. 362; Ann. Cas. 1912B, 1239, decided by the Supreme Court of Washington and cited by counsel, is a case where the doctrine last referred to is illustrated and applied. *Neary* v. *Northern Pac. Ry. Co.,* 37 Mont. 461; 97 Pac. 944; 19 L. R. A. (N. S.) 446, and *Tunnison* v. *Chicago, M. & St. P. Ry. Co.,* 150 Wis. 496; 137 N. W. 781, also cited by counsel, are like the *Birrell* case. None, however, of the cases cited by counsel is, in our judgment, parallel to the case at bar. True, there are general expressions in many of the cases that a railroad when in use for the passing of trains is always a place of danger, and that it is negligence *per se,* as some of the courts put it, to walk on such railroad track. In making such general statements courts, however, do not mean that under all circumstances and conditions it is negligence as a matter of law for a person to enter or walk on a railroad track which is used for passing trains. Such, in the very nature of things, cannot be the law. Although it be said that a railroad track which is being used for the passage of trains is a constant menace and place of danger, yet all men know that at times and places it becomes a matter of necessity for some to enter upon and walk on railroad tracks. To do so, under some circumstances, is simply unavoidable, and the railroad companies, in many instances, cause it to be so themselves. To hold, therefore, that under any and all circumstances, it is negligence as a matter of law to enter upon or walk on a railroad track, which is in use for the passage of trains which might cause injury, is contrary to common experience, as well as contrary to common sense. It is true that where, as in the *Wilkinson* and *Bates* cases, *supra,* it is clear that the injured person failed to comply with a positive duty imposed by law, and in consequence of such failure suffers injury, he cannot recover although the railroad company may also have failed in the discharge of a duty imposed upon it by the same law. As pointed out in those cases, however, there may be cases where a person is injured while walking on or passing over a track, and he may, nevertheless, not be

guilty of negligence as a matter of law. Such a case we are dealing with now. Can it be said that, under the facts and circumstances disclosed by the evidence adduced by the respondent in this case, as a matter of law the deceased was guilty of such negligence as prevents a recovery? It could subserve no purpose for us to discuss the facts. The most we could accomplish would be to give reasons pro and con respecting the negligence and want of negligence of the deceased. While from the evidence many facts could be construed as pointing to the lack of care, there are also many facts and circumstances which admit of a contrary construction. In this connection it may well be that if the jury had adopted the theory of appellant and had disregarded, that is, disbelieved, all of the testimony of respondent's witnesses, or if we could do so, counsel's claim of contributory negligence might prevail. The jury in arriving at their verdict must, however, have believed the testimony of respondent's witnesses, and must have adopted their statements respecting the circumstances and conditions under which the accident occurred.

Under those circumstances and conditions the question of the negligence of the deceased comes squarely within the rule laid down in *Newton* v. *O. S. L. R. Co.*, 43 Utah 219; 134 Pac. 567, where, in passing upon this same question, we said:

"All that can be said is that, unless the question of negligence is free from doubt, the court cannot pass upon it as a question of law; that is, if after considering all of the evidence and the inferences that may be deduced therefrom the court is in doubt whether reasonable men, in viewing and considering all the evidence, might arrive at different conclusions, then this very doubt determines the question to be one of fact for the jury, and not one of law for the court. The court can pass upon the question of negligence only in clear cases."

This conclusion is unavoidable, as we pointed out in that case, because under the Constitution of this state this court is prohibited from passing upon the facts in a law case, or from weighing the evidence. The distance, under the evidence, that the deceased was required to

walk on appellant's track was only about one hundred feet. Can any court say that it is negligence as matter of law under all circumstances for a person to undertake to walk that distance upon a track when, as here, he is in the discharge of his duty and there is no other safe place for him to walk? True, it may constitute negligence as a matter of law for one merely to attempt to cross a railroad track which is in use. But that, too, as we have seen, depends upon circumstances and conditions. We are not prepared to hold that under the facts here disclosed the deceased was guilty of negligence as a matter of law in walking upon the track in question at the time of the accident. It is, however, in effect, contended, that the negligence may not have consisted so much in walking on the track as it did in entering upon it in the manner it was done, that is, without exercising ordinary care. But here again the jury had the right to consider the circumstances and conditions surrounding the deceased at the time. We are clearly of the opinion that the court did not err in refusing to direct a verdict for appellant.

Error is also assigned upon the charge to the jury. It is insisted that the court erred in charging the jury as follows:

"It is a presumption of law that every man exercises due care for his own safety when in a place of danger, and the presumption is that the deceased did so at the time and place when and where it is claimed he met his   4. death. The court further instructs you that the plaintiff need not affirmatively prove that the deceased looked and listened for the train. The presumption is that he did so, and the burden of proof that he did not is upon the defendant railroad company, and it must be proved by a preponderance of the evidence."

This identical instruction was complained of in the case of *Evans* v. *O. S. L. R. Co.*, 37 Utah 431; 108 Pac. 638, Ann. Cas. 1912C, 259. We there held that the instruction was not prejudicial to the rights of the appellant in that case, and we can see no difference between that case and this case. The instruction, however, has frequently been upheld by the courts. See the cases cited in the *Evans* case, 37 Utah, page

448; 108 Pac. 638; Ann. Cas. 1912C, 259. See, also, *Flynn* v. *K. C., St. J. & C. B. R. Co.,* 78 Mo. 212; 47 Am. Rep. 99; *Northern Pac. Ry. Co.* v. *Spike,* 121 Fed. 44; 57 C. C. A. 384, and *Ready* v. *Peavey El. Co.,* 89 Minn. 154; 94 N. W. 442, where the principle is discussed.

We desire to say now what perhaps we should have said in deciding the *Evans* case, namely, that the mere fact that an instruction is held not to constitute error in a particular case is no reason why it should be accepted as a model to be followed in all cases of similar character. While the instruction criticized by counsel in this case states a correct abstract principle of law in stating the presumption, yet it is not to be approved as a model, since the last two sentences are clearly argumentative. Moreover, it is not presumed that a person did a particular thing in a particular way. The court may well inform the jury that, in the absence of evidence to the contrary, a person who was exposed to danger is presumed to have exercised due care for his safety. There is no presumption, however, that he, under particular circumstances, did a particular thing. Courts, therefore, should confine themselves in charging the jury to a statement of the presumption without adding argument. We cannot see, however, how the argument in this case could have misled the jury, and especially not in view of what the court said in the instruction immediately following the one complained of, which in fact was still a part of the one criticized, and wherein the effect of the presumption is limited and explained. But it is contended that the instruction was improper in this case in any event because there was direct evidence that the deceased did not look or listen for the approaching train at the time or just before he entered upon the track. All the evidence there is upon that subject is that of the witness Whitehead. That witness said he saw the deceased after leaving the dinkey engines approach the track, and when he had reached it saw him stop a moment then step onto the track. The witness then turned his head in another direction for a moment, and on turning again to look where he last saw the deceased he saw his lantern fly in the air and saw a train passing. The witness said all he saw of the deceased were

his legs moving, which he saw from the light of the lantern
the deceased was carrying.  There is, therefore, no evidence
whatever that the deceasd did not look nor listen before going
on the track.  All the evidence there is upon that subject
is to the effect that he stopped for an instant before going
thereon.  What evidence there is therefore supports rather
than contradicts the presumption.  That he could not have
looked or listened for the reason that the train must have
been very near him when he stepped on the track presupposes
and assumes the fact that if he had looked or listened he
must have seen or heard the train.  This, under the circum-
stances disclosed by the evidence, did not necessarily follow.
The witness Whitehead looked and listened, as he says, but
he neither heard nor saw the train.  Besides, the evidence is
all but conclusive that the night was so dark that a train
without lights on the end approaching a person could not
have been seen.  Then again, the noises were such, under the
evidence, that the noise of one train moving at one point could
not well have been distinguished from the noise of another
moving at another point.  The whole matter was for the
jury to determine under the evidence.

It is next urged that the court erred in defining contribu-
tory negligence in its charge to the jury. What is complained
of in that regard is that the court erred in defining
contributory negligence thus: "Where a person in-
jured has proximately contributed to the injury by his
want of ordinary care, so that but for such want of ordinary
care on his part the injury would not have been done," and,
further, in referring to contributory negligence the court
said that it is "such negligence that except for it the de-
ceased would not have been injured." It is contended that
the legal effect of the foregoing charge is that contributory
negligence does not exist unless, as counsel put it, it is "the
sole cause of the accident." It is conceded that in other por-
tions of the charge the court correctly states the law with re-
spect to when contributory negligence would defeat a recovery
in telling the jury that it was only necessary that such negli-
gence proximately contributed to the injury complained of.
In this connection it is, however, contended that the latter

charge could not cure the error committed in the former one. If the former one is erroneous, no doubt counsel's contention is sound. But the statements of courts and textwriters that contributory negligence to defeat a recovery must be such that "but for such negligence the accident would not have happened," or that "but for which act on the part of the person injured such injury would not have occurred," or that "but for which the injury would not have occurred" have too often been repeated to admit of serious criticism now. See 1 Thompson's Comm. Law of Neg., Section 221; 29 Cyc. 527, 528, and 7 A. & E. Enc. L. (2nd Ed.) 381, for the expressions above quoted. In a recent case (*Basler* v. *Sacramento, etc., Co.,* 158 Cal. 514; 111 Pac. 530; Ann. Cas. 1912A, 642) the Supreme Court of California in effect defines contributory negligence the same as it is defined in the charge complained of. We are of the opinion that no error was committed in defining contributory negligence.

Finally it is contended that the court erred in permitting a jury to be called to try the case for the reason that the jury fee was not paid until a few minutes before the case was called for trial. Our Constitution (Article 1, Section 10) provides: "A jury in civil cases shall be waived unless demanded." Comp. Laws 1907, Section 3129, among other things, provides that a jury must be demanded in writing "prior to the time of setting such action for trial, or within such reasonable time thereafter as the court may order, or orally in open court at the time of such setting," and the party demanding a jury "must at the same time deposit with the Clerk the sum of five dollars, whereupon it shall be the duty of the court to order jurors to be in attendance at the time set for the trial of the cause." In this case a jury was properly demanded, but the fee was not paid except as above stated. The purpose of the demand, as appears from the foregoing statute, is to enable the court to have a jury in attendance when the case comes on for trial. We think that where a jury is in fact present so that the trial may forthwith proceed without delay, the adverse party cannot successfully interpose the objection that the jury has not been demanded or the jury fee paid in the pre-

cise manner and at the precise time prescribed by the statute. The provisions in the statute are not intended for the benefit of an adversary. No doubt if the demand and payment are not made as required by the statute the party has waived his right to require the court to call a jury, but we cannot see how the adverse party can complain if the court, in its discretion, permits a jury to try the case if one is in fact in attendance and no delay is occasioned in proceeding with the case. In our judgment, where a jury is in attendance the court may permit a party to pay the jury fee at any time before a trial, and may impanel a jury to try the case. In principle we see no difference between the case at bar and *Ogden Valley, etc., Co.* v. *Lewis,* 41 Utah 183; 125 Pac. 687, where we held the question of calling a jury, where the right to demand one has been waived, to be largely within the discretion of the court, and that the calling of a jury by the court to try a case where a jury has been waived is not error. At all events, we cannot presume that appellant was prejudiced by the mere fact that a jury was called to try the case, and none is shown. It may be, however, that the trial court, where the statute has not been complied with, should tax the jury fee to the party demanding a jury, and not permit him, if successful, to tax it against the losing party.

The judgment is affirmed with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.