# CLARK v. LOS ANGELES & SALT LAKE R. CO.

No. 4726.   Decided December 13, 1928.   (275 P. 582.)

488

*George H. Smith, J. V. Lyle, R. B. Porter, Dana T. Smith,* and *J. T. Hammond, Jr.,* all of Salt Lake City, for appellant.

*J. W. Robinson* and *J. Robert Robinson,* both of Provo, for respondent.

STRAUP, J.

This action was brought by the plaintiff to recover damages for the death of her intestate alleged to have been caused through the negligence of the defendant in a collison of a train operated by the defendant and an automobile truck driven by the deceased at a public crossing. The case was here on a former appeal. On the former trial, at the conclusion of all the evidence adduced by both parties, the court directed a verdict in favor of the defendant on the ground of insufficiency of evidence to show negli-

gence on the part of the defendant and on the ground of contributory negligence of the deceased. On appeal by the plaintiff, we reversed the judgment and remanded the case for a new trial. *Clark et al.* v. *U. P. R. R. Co.* (*L. A. & S. L. R. R. Co.*) (Utah)—257 P. 1050. A retrial of the case resulted in a verdict and judgment in favor of the plaintiff from which the defendant has prosecuted this appeal.

It again is urged that the evidence is insufficient to show negligence on the part of the defendant and that the evidence conclusively shows contributory negligence on the part of the deceased. The evidence on the two trials is substantially the same, the substance of which is set forth in our former opinion. It is unnecessary to here restate it. In no particular does the defendant point out wherein there is any substantial difference. Thus what we in our former opinion ruled as to the sufficiency and character of the evidence to require a submission of the case to the jury is to be regarded the law of the case. No error, therefore, was committed in letting the case to the jury.

The defendant, however, further contends that the court, on the defendant's motion for a new trial on grounds of insufficiency of the evidence and of contributory negligence, erred in overruling the motion. It cannot be said that such a question was necessarily adjudicated by the former opinion. While on a given state of facts and circumstances a court may not be justified in withholding a case from the jury, yet, after it is submitted to them and a verdict rendered, if the court on a motion for a new trial is of the opinion that the jury in rendering the verdict disregarded the manifest weight of the evidence, or misconceived it, or disobeyed the charge, or were influenced through passion or prejudice, the court would not only be authorized, but it would be its duty, to grant a new trial. But in such case we ordinarily do not interfere with or disturb the court's ruling in either granting or refusing a new trial, except for an abuse of discretion. Thus the

defendant is not, by the former opinion, precluded from presenting such a question on this appeal, though as to the facts and circumstances there is no substantial difference in the two trials. We, however, on a review of the record, are of the opinion that no such an abuse has been shown, and that thus the overruling of the defendant's motion for a new trial on the stated grounds was authorized and justified.

Over the objection of the defendant, the plaintiff, in the course of the trial, was permitted to show the condition of the minor children of the deceased as to health, and to show that one of them, less than five years of age, suffered from or was afflicted with a partial ptosis of the eyelid, which, when the child became 5 years of age, required "an expensive operation." Further than that no testimony was given as to the nature of the operation nor as to the expense or cost of it. No error was committed in the ruling. *Evans et al.* v. *O. S. L. R. R. Co.*, 37 Utah 431, 108 P. 638, Ann. Cas. 1912C, 259.

In the course of the trial motions were made by the defendant to strike the testimony of each of the two school-girls and each of the two teamsters hauling beet pulp, witnesses who testified on the former and on this trial for the plaintiff. The testimony of these witnesses is set forth in our former opinion. It is not claimed that the testimony of any of such witnesses was different on this than on the former trial. It is urged the testimony ought to have been stricken, for the reason that it was not sufficiently shown that any of such witnesses was sufficiently near the place of the accident, or in such proximity to the train as it approached the crossing or otherwise in a situation or position to hear signals, had any been given of the train's approach, and that hence the testimony of such witnesses that they did not hear any signals given of either ringing the bell or of sounding the whistle of the engine, ought to have been stricken. This also presents a somewhat different question from that presented on the former

appeal. On the former trial, the testimony of all of these witnesses was received over the objections of the defendant. On the former appeal, there being no cross-assignments of error, the plaintiff, in having considered questions of evidence to show negligence on the part of the defendant and of contributory negligence, thus had the benefit of all of such testimony. It, however, on the former appeal, was urged by the defendant that the testimony of such witnesses, for the reasons stated, had no probative value, and at most was mere negative testimony, and not of such character as to raise any substantial conflict with the positive evidence of the defendant that signals were given as the train approached, and that therefore the court was justified in directing a verdict in favor of the defendant. We held that contention against the defendant. We then were called upon to decide the question of sufficiency of such evidence, though negative in character, to raise a conflict with the positive evidence adduced by the defendant. We decided that against the defendant. We now are called upon to determine the competency of such testimony and the ruling of the court in refusing to strike it on the ground and for the reasons urged by the defendant. In our former opinion, we pointed out that, according to the testimony of such witnesses, they listened for signals of the train, gave reasons why they were listening and paying attention to ascertain the train's approach, that they were in position to hear, and that they could have heard the signals had they been given, and that they heard no signals. Their testimony on the trial is to the same effect. We thus think the testimony was competent and properly received, and the motion to strike properly overruled. True, the defendant, on this as on the former trial, gave evidence tending to show, or rather evidence to show, circumstances and conditions from which inferences could be deduced that all of such witnesses as the train approached the crossing were much farther from the crossing than as testified to by them, and were so situated that in all probability they would not

or could not have heard the signals had they been given. But as to that we said on the former appeal, and we again say, the evidence was in conflict, and therefore whether these witnesses were or were not in a position to hear signals had they been given, and as to whether they were or were not paying sufficient attention to the train's approach that they could or would have heard signals had they been given, were questions for the jury. The reasons for such a conclusion reached by us are set forth and discussed in our former opinion. We are content with what we there said on the subject.

Complaint also is made of the court overruling the defendant's motion to strike the testimony of an engineer called by the plaintiff as to the speed of the defendant's train as it approached the crossing, or rather within what distance, on a given state of facts, a train traveling at 30 or 32 miles an hour, at 60 miles, and at other various speeds, could have been stopped. The testimony in such respect also is referred to in our former opinion. Again no claim is made that the evidence in such particular was different on the former trial than on this trial. It now is urged by the defendant, as it was urged by it on the former trial, that the competency and qualifications of the engineer were not sufficiently shown to express an opinion as to the matters indicated, and that evidence was given to show his incompetency when in prior service of several railroad companies and discharged by them. All such circumstances and conditions were gone into on the former trial. Not anything relating to the incompetency or disqualifications of the witness was developed on this trial that was not developed on the former trial. We again have here presented a somewhat different question from that presented on the former trial. On plaintiff's appeal, and in considering the question of sufficiency of evidence to show negligence on the part of the defendant, she again had the benefit of this testimony. It then was urged by the defendant that, because the witness had not properly quali-

fied, his testimony was of no probative value, and therefore the court, in passing on the motion for a directed verdict, may have been justified in disregarding it or in attaching no importance to it. We held against the defendant as to that. Now we have presented the question as to the competency of the witness, the rulings of the court admitting the testimony and in refusing to strike it. While there is a similarity of the two presented questions, yet we are of the opinion that the defendant is not precluded from now presenting the rulings admitting the testimony and the refusal to strike it. We therefore have examined the record for such purpose.

In qualifying, the witness testified that in the employ of different railway companies he had had 6 years' experience as an engineer in operating railway locomotives, 7 years as a fireman, and had experience in operating a light type of engine similar to that operated by the defendant at the time in question; that, when he was promoted from fireman to engineer, he took an examination, among other subjects, respecting rules, machinery, and applications of brakes on various types of engines; that he had experience in making stops of engines and trains at different rates of speed, 25, 30, 40, 50, and 60 miles an hour, and under various conditions and in making emergency stops; that from his experience as an engineer in operating engines and trains, if given the place brakes in an emergency stop were applied and the distance the train ran until it was stopped, the type and weight of the engine and number of cars, the grade of the track and the condition of the brakes and of the rails, he was able to determine the speed of a train when the brakes were applied; that a light type of engine such as operated by the defendant weighing 187 tons and drawing two coaches running 30 miles an hour (the speed at which the defendant contended the train moved as it approached the crossing and an emergency stop attempted), with brakes in good condition and the track approximately level, could be stopped in a distance of 300 or 350 feet; at 40 miles an hour within

a distance of 400 to 450 feet; at 50 miles an hour within a distance of 650 feet; and at 60 miles an hour within a distance of 800 feet. On cross-examination he further testified that he was familiar with passenger tests made on various trains during the last 20 or 30 years and with running tests of regular passenger trains; that, when on the road and in the service, he had examined test books published by the Westinghouse Air Brake Company; that some of the elements entering into the distance within which a train could be stopped were the condition of the engine, the track, the brakes, and the time it took them to take hold, and that the brake cylinder pressure and the shutting off of steam also were important; that he was familiar with trains similar to that involved in the accident, and had made tests to determine within what distance such a train could be stopped, and saw others make similar tests; and that he made a stop with a train consisting of an engine and two cars going 60 miles an hour within 800 feet after the brakes were applied.

We think it clear that the competency and qualifications of the witness were sufficiently shown, and that it would have been error to have excluded or stricken his testimony. On his voir dire and on cross-examination by the defendant he further testified that he, as an engineer, was dismissed from the service of the Colorado Midland and, when in the service of the D. & R. G. W. R. R. Co., was given demerits, and later dismissed from that service, but denied such dismissals were due to incompetency or on other justifiable grounds. Whatever effect, if any, such testimony had as to the competency and qualification of the witness to testify concerning the subjects testified to by him affected merely the weight of the testimony and not its competency. No error was committed in these rulings.

We now come to a more serious question. One of the alleged acts of negligence was that because of the character of the crossing and the extent of public travel over it, and of the condition of the weather, a fog so dense that as testified to by some of the witnesses an ap-

proaching train could not be seen for a distance to exceed 50 to 75 feet, the train as it approached the crossing was operated at a dangerous and negligent speed. The plaintiff gave no direct evidence as to the speed at which the train was operated. Testimony was given to show that an emergency application to stop was made when the train was 30 or 35 feet from the crossing, and, notwithstanding the brakes were in good condition and that all was done that could be done to stop the train, nevertheless, it was not stopped until it had run a distance, as testified to by some of the witnesses, of 937 feet and by others of 950 feet, from which, and upon the testimony of the engineer called by the plaintiff that such a train running 60 miles an hour could be stopped within a distance of 800 feet, an inference was deducible, as contended by the plaintiff, that the train was operated at a speed of 60 miles or more an hour, which, as the plaintiff also contended, was, under the stated circumstances, a negligent and a dangerous operation of the train as to those approaching and attempting to pass over the crossing. Such constituted plaintiff's evidence as to the speed of the train.

On behalf of the defendant the train crew testified that the train as it approached the crossing was not going to exceed 30 or 32 miles an hour. The engineer, a Mr. Rossiter, who operated the engine at the time in question, testified that stopping the train within 937 or 950 feet after the brakes were applied was a good stop. The defendant also called a mechanical expert, a representative of the Westinghouse Air Brake Company, who testified that under the conditions stated a train going 32 or 33 miles an hour could not be stopped short of 850 or 1,000 feet. Defendant also called another engineer, a Mr. Beeless, who testified that under the conditions stated it would require 1,000 feet in which to make an emergency stop with a train of an engine and two cars going 32 or 33 miles an hour, 800 feet going at 25 miles an hour, and 50 feet going at 10 miles an hour.

After cross-examining Engineer Beeless by counsel for

plaintiff concerning his direct testimony, plaintiff's counsel further asked him:

"Q. Are you acquainted with Charles A. Connors?   A. Yes.

"Q. He is an engineer on the D. & R. G. W.?   A. Yes.

"Q. He operated an engine a number of years didn't he?  A. Yes.

"Q. And you know him as an expert engineer, you regard him as an expert engineer?   A. I don't think he is, no.

"Q. You don't think he is an expert?   A. No, not Connors.

"Q. He testified for the railroad company at the last trial?  A. No, I didn't know until I was told a few minutes ago he testified.

Q. He testified as an expert like you are?   A. Yes.

"Q. The railroad company had him at that time like they have you. I want to read to you some of Mr. Connors' ideas how a train can be stopped while testifying for the defendant at the former trial."

On objections made to this and overruled, counsel for plaintiff thus proceeded:

"Q. Now in Mr. Connors' examination 'How far would it take to stop a train going at 10 miles an hour?' and he answered 'At what rate of speed?'

"Q. 'This type of train going 10 miles an hour?' A. 'I should think in 200 feet.' "

Counsel for the defendant again objected, and asked that the record show that counsel was reading from the testimony of witness Connors given at a previous trial, and that it was not proper cross-examination to interrogate the witness upon that testimony. Counsel for plaintiff stated that he was interrogating the witness on the testimony of Connors who was an expert witness called by the defendant on the previous trial. The court stated that the record may so show and overruled the objection.

Then counsel for plaintiff further reading to the witness from the previous record respecting Connors' testimony:

" 'Q. This type of train going 10 miles an hour? A. I should think about 200 feet.' "

Then addressing the witness:

"That would be your judgment?  A. No, sir, I think it would be 50.  Q. You would say 250?  A. I said 50.  Q. You think you could

stop in 50 feet? A. I know I can. Q. Mr. Connors is off 150 feet? A. That is what I said."

Then further reading from the testimony of Connors:

" 'Q. 200 feet; and how far with a train going 20 miles an hour? A. Possibly 300 feet or 350 feet.' "

Then he asked the witness:

"Q. Do you think he (Connors) is right there? My question, do you agree with Mr. Connors in his judgment in stopping a train at that rate of speed? A. How fast was that? Q. He says from 300, going 20 miles an hour from 300 to 350 feet? A. He is a little nearer. Q. That is pretty close? A. That is pretty close."

Then counsel for plaintiff further reading from Connors' testimony:

" 'Q. How far going 25 miles an hour? A. I suppose probably 400 feet or something like that.' "

Then counsel asked the witness:

"Q. Do you agree with Mr. Connors on that question? A. He is not right there. Q. Do you think you can stop a train going 20 miles an hour in 300 to 350 feet? A. Yes. Q. Then going 25 miles an hour you don't think you can stop in 400 feet? A. 600. Q. You said 800 a few minutes ago, you say six now? A. Yes."

Again, it was a material matter of inquiry and concerning which there was a dispute as to whether the two schoolgirls and the two teamsters, who testified for the plaintiff that they did not hear any signals given as the train approached the crossing, were sufficiently near the crossing to have heard signals had they been given. They testified they were, but further testified they did not know an accident had happened until they reached the crossing and then were told about it by a section crew clearing away debris after the train, with the bodies of plaintiff's intestate and of Ludlow, his companion on the truck, had backed to Spanish Fork about three-fourths of a mile from the crossing. Evidence was given by the defendant that the train remained at the

crossing about 15 minutes before it started back, that it took about seven minutes to go to Spanish Fork, that it remained there about 15 minutes before it was backed to Provo, that the section crew did not go to the place of the accident until after the train had left Spanish Fork to go to Provo, and thus it was more than 37 minutes after the accident until the schoolgirls and the two teamsters arrived at the crossing, from which it was argued that such witnesses were so far from the crossing that, had signals been given of the train's approach, they would not or could not have heard them. The schoolgirls and the teamsters testified that at about 9:38 a. m., the time of the accident, or between 9:30 and 9:37, they were from one-fourth to one-half mile from the crossing, and on the highway traveling towards the crossing, and well could have heard the signals had they been given. The plaintiff also gave evidence to show that the section crew were at the place of the accident shortly after its occurrence and at about the time the train after the accident had backed to Spanish Fork. On the train's arrival at Spanish Fork, it was discovered that the dead body of Ludlow among debris was lying on the pilot of the engine. Plaintiff's intestate still was alive, but died while the train was being backed to Provo, or shortly after it reached there. Rossiter, the engineer called by the defendant, in his direct examination and in line with the contention of the defendant that the section crew had not gone to the place of the accident until more than 37 minutes after the accident had occurred, and not until the train had departed from Spanish Fork to go to Provo, testified that Ward (the section foreman) and his two men with some of the passengers helped to remove the body from the pilot; that Ward and his men also removed the debris from the pilot, and remained at Spanish Fork until the train moved on toward Provo. Plaintiff's counsel, after cross-examining Rossiter respecting such matters, then asked him:

"Q. You have testified on two different occasions on this trial haven't you, on this case haven't you? A. I have.

"Q. And on either time you have testified before you have not said anything about Mike Ward and the section men remaining with you until the train left for Provo, have you? A. I have not been asked how long he remained with me before.

"Q. You weren't asked that today were you? A. I think I was.

"You have not testified to that fact before that Mike Ward and his section men stayed at the Spanish Fork depot until you got orders to leave? A. I testified he had been there, assisted in taking the body off and as to the fact whether or not he remained until I received orders, I was never asked.

"Q. When did you tell Mr. Porter (counsel for defendant) that? A. Told him here this morning.

"Q. That was the first time you thought of that? A. In the court here.

"Q. You heard the conductor Mr. Moore, testify? A. Yes, sir.

"Q. You heard him testify the first time? (At the former trial.) A. Yes sir.

"Q. Do you remember him testifying as follows?"

Here counsel for the defendant objected on the ground that it was not proper cross-examination, and that it was improper to cross-examine the witness as to the testimony of other witnesses. The objection was overruled.

Then counsel for plaintiff proceeded to interrogate the witness as to what Moore had testified to at the former trial by reading a portion of Moore's testimony given at that trial:

" 'Q. Who helped you take the body off the pilot that was dead? A. Yes.

"Q. Who helped you? A. The passengers. Q Anyone else that you recall? A. I can't recall.

"Q. Certain ones of the passengers? A. Yes.' "

Then the witness Rossiter was asked by counsel for plaintiff:

"Q. Do you remember him so testifying? A. I have a recollection.

"Q. Do you remember him testifying as follows: 'Q. Did you leave the chassis of the truck on the track?' and to that Mr. Moore answered 'Yes.' 'Q. Then when you reached Spanish Fork did you order the section men, these section men there to go immediately back and take it off? A. Yes.

"Q. They were there with a gasoline car and went right away did they? A. Yes.' "

Then counsel for the plaintiff asked the witness Rossiter:

"Q. Now after hearing that testimony of Mr. Moore do you still want to maintain Mr. Mike Ward and the section men stayed there with you at the depot until you got your orders to go to Spanish Fork or Provo? A. I certainly do. I didn't testify anything like that in the first trial.

"You still say Mr. Ward stayed with you? A. Yes sir.

"Q. You still say Mr. Johnson (a section man) stayed with you? A. Yes, sir. Q. Notwithstanding Mr. Moore said they went immediately and took the chassis off? A. They didn't go immediately.

"Q. They stayed there with you 15 minutes? A. Yes sir.

"Didn't go down at all until after you left? A. Yes sir.

"Q. Stayed there? A. Stayed there and were active.

"Q. You want to say that even though the conductor (Moore) ordered them to go there immediately? A. The conductor didn't stop outside he went in the depot, he didn't know what was going on after he went in the depot.

"The Court: The witness has maintained his evidence in face of what anybody else may have said. That concludes that phase of it."

All this was given over the objections of the defendant.

We have thus set forth these proceedings with reference to the cross-examination relating to what Connors and Moore had testified to at the former trial somewhat in detail as bearing on the question of whether error was committed, and, if so, and more particularly, as to its harmful or unharmful effect. That error was committed in permitting counsel so to cross-examine the witnesses as to the testimony of Connors and Moore on the former trial, and thereby allowed to put before the jury what on that trial was testified to by them, hardly admits of controversy. *Howland* v. *Oakland Consol. St. Ry. Co.*, 115 Cal. 487, 47 P. 255; *Temple* v. *Duran* (Tex. Civ. App.) 121 S. W. 253; *Hurley* v. *Territory*, 13 Ariz. 2, 108 P. 222; *B. & O. R. Co.* v. *Deck*, 102 Md. 669, 62 A. 958; *City of Bloomington* v. *Shrock*, 110

Ill. 219, 51 Am. Rep. 678; *State* v. *Blackburn,* 136 Iowa 743, 114 N. W. 531.

In the direct examination of Beeless, no reference was made to Connors nor to his testimony given at the former trial. In the direct examination of Rossiter, likewise no reference was made to Moore nor to his testimony given at the former trial. By the cross-examination counsel for plaintiff was not only permitted to put before the jury what Connors and Moore had testified to on the former trial, but also to solemnize it by reading it from the prior record, and then ask the witness if he was in accord with such testimony. We think that was not only error, but also was prejudicial. All committed errors, of course, are not presumptively prejudicial. But, when the error is of such nature or character as calculated to do harm, prejudice will be presumed until by the record it is affirmatively shown that the error was nor or could not have been of harmful effect, *Jensen* v. *Utah Ry. Co.* (Utah) 270 P. 350. Counsel for plaintiff contends that "the substance" of the questions was proper, and therefore no error was committed. He also contends that the rulings, if erroneous, were not prejudicial; but he has not pointed out anything to substantiate that. He cites 3 Jones Comms. on Evidence, p. 2452. The citation deals with an entirely different subject, that of cross-examining an expert witness on hypothetical questions. The cross-examination here complained of in no particular related to such a subject, but to what other witnesses on a former trial had testified to and what the witness on the stand thought of the weight and reliability of such testimony, whether he agreed with it. The respondent also urges that expert witnesses "may be subjected on cross-examination to such test as may be necessary to ascertain whether they are accurate, impartial and credible," and that they may be asked if they had not on other occasions expressed opinions different from those given on the witness stand. Certainly. But that is not what counsel did. He read to the witness what another witness on a previous trial had testified to, and then asked him

if he agreed with it. Counsel argues that the questions were asked not to contradict a witness, but "for the purpose of determining whether or not the witness on the stand agreed with the testimony of witnesses given on a former trial," and that the witness could say whether he did or not, "without affecting the rights of the defendant." In no other particular is it claimed the rulings were nonprejudicial. We think they were prejudicial, for the reason that the plaintiff by such means improperly got before the jury what witnesses on the former trial had testified to, solemnized it by reading it from the record of the former trial, and thus brought such testimony to the direct attention of the jury bearing upon material issues, and which was calculated to improperly affect their consideration. The testimony of Connors, as read to the jury, if it did not corroborate the claim of the respondent at what speed the train was operated as it approached the crossing, it did in particulars dispute the claim of the defendant and the testimony of witnesses called by it and testifying on that subject. The testimony of Moore given on the former trial and read to the jury, not only corroborated the claim of the respondent that the section men were at the crossing some time before the train left Spanish Fork and were there shortly after the accident occurred, but also disputed the claim of the defendant and the testimony of its witness that the section men were not at the place of the accident until more than 37 minutes after it occurred. We have already pointed out wherein that controversy was material and wherein it had a bearing on the weight of the testimony of the schoolgirls and the teamsters called by the plaintiff. The improper cross-examination being thus calculated to improperly affect the consideration of the jury in the particulars indicated, we on the record do not find anything to justify the conclusion that the cross-examination objected to did not have such effect. What was said by the court in the case of *Howland* v. *Oakland Consol. St. Ry. Co.*, supra, as to the prejudicial effect of such kind of cross-examination by means of

which there was brought to the attention of the jury what another witness had testified to on a former trial, may well be said here.

Complaint also is made of the charge to the jury. The court charged:

"You are further instructed that it is the presumption of law that every man exercises due care for his own safety when in a place of danger and the presumption is that the deceased did so when he approached the crossing and the court instructs the Jury that the plaintiff need not affirmatively prove that the deceased looked and listened for the train before coming upon the crossing."

The claim in such particular is that the court by such instruction in effect directed the jury that there was such a presumption regardless of what the evidence might be bearing on the question of the care or the want of it exercised by the deceased. In such particular it is urged that the court ought to have directed the jury that such a presumption only exists or may be indulged, in the absence or independently of evidence as to the care or the want of it exercised by the deceased, or of facts or circumstances from which inferences may be deduced with respect thereto; but, when evidence or facts and circumstances respecting such matters are adduced, then the question of the care or the want of it exercised by the deceased is to be determined on the evidence and facts and circumstances, and not upon the presumption. The rule contended for by the appellant is the rule prevailing in this jurisdiction. *Ryan* v. *Un. Pac. R. Co.*, 46 Utah 530, 151 P. 71, *State* v. *Steadman* (Utah) 259 P. 326.

The serious question, however, is as to whether the charge is open to the contention that it did more than cast the burden of proof on the defendant to show negligence on the part of the deceased, and whether such was the natural and obvious meaning conveyed to the jury, or whether the charge also gave the jury to undertsand that they should or could regard the presumption as of evidentiary force and effect

and as to whether they may so have considered the presumption in connection with proven facts and circumstances bearing on and in determining the question of care or the want of it exercised by the deceased. In considering a charge relating to the same subject, though dissimilar in language, this court in the Ryan Case said:

"In the absence of evidence there is a presumption that the deceased used due care and, for his protection, did all that reasonably was required of him. Had the court charged that and stopped, the charge would not have been erroneous. When, however, facts and circumstances are proven to show just what the deceased did, or failed to do, then his care, or the want of it, is to be determined, not on the presumption, but upon the facts and circumstances proven. That is, whenever the facts or circumstances are shown concerning which the presumption is indulged, the presumption ceases, and the controversy is to be decided by the weight of the evidence adduced. That is not what the court charged. As charged, the jury were permitted to cast the presumption on the scales and to consider and weigh it with the proven facts and circumstances. There is a presumption of sanity, but when evidence respecting the sanity or insanity of the person whose mental condition is the subject of inquiry is adduced, the presumption, except as it bears on burden of proof, is spent and the controversy is to be decided on the weight of the evidence adduced. There, as here, the presumption calls for evidence; but when it is adduced the controversy must be decided on the evidence, not on the presumption. Here the court, regardless of what facts were proven as to the deceased's conduct, in effect charged that the presumption itself was evidence to be considered in connection with the proven facts. That was wrong."

The same rule of law is stated in *State* v. *Steadman*, supra. The rule as stated in such cases is, as we believe, the undoubted weight of authority. 1 Elliott on Evidence, §§ 91 and 92; Thayer's Preliminary Treatise on Evidence; 1 Jones Comms. on Evidence (2d Ed.) § 30; 5 Wigmore on Evidence (2d Ed.) § 2491; 9 Ency. of Evidence, 885; 22 C. J. 156.

In some jurisdictions cases may be found where it is held that presumptions have evidentiary force, and as such may be considered. But in most of such cases it will be seen

that the matter dealt with was a presumption or inference of fact, and not a presumption of law, or where the former was mistaken or misconceived for the latter. As is recognized generally by authors on evidence as well as by adjudged cases, there is a well-defined distinction between a presumption of law and a presumption of fact. Not observing the distinction has led to confusion in some of the cases. This is clearly pointed out by the author, 1 Elliott on Evidence, § 76; and in 1 Jones Comms. on Evidence (2d Ed.) § 23, where it is said that "no word in the legal parlance is used in a greater variety of sense, or more frequently misused, than the word 'presumption.' Confusion of the use extends, in fact, beyond that term and includes as well the companion words 'assumption' and 'inference.' " When the term, "presumption of law," is properly kept in mind, it is quite clear that such a presumption but performs the office or effect as indicated in the Ryan and Steadman Cases, and, as shown by the texts heretofore cited, to temporarily or in the first instance relieve the party in whose favor the presumption arises from going forward with evidence and to cast upon the party against whom it works the duty of going forward with evidence and of proving by a preponderance thereof a state of facts or circumstances inconsistent with the presumption, or, in other words, to prove the charged negligence of the deceased, unless such negligence is shown by the evidence adduced on the part of the plaintiff. But, when such evidence is adduced, the question of whether the party on whom the burden of proof rested has or has not sustained the burden by the required quantum of evidence is to be determined upon the evidence adduced and upon all the facts and circumstances in evidence, and not upon the presumption. In such case, the presumption of law has no evidentiary force or effect. Presumptions of fact, sometimes called mere inferences deducible from proven facts or circumstances, do have evidentiary force and effect, and, as such, may be considered in connection with all other proven facts and circumstances in determining the ultimate

fact concerning which the inference and other proven facts or circumstances relate. The presumption here involved is a presumption of law and not of fact. The presumption that the deceased, in the absence or independently of evidence, used due care and did all that prudence required, is but an application of the general rule of law that all persons charged with negligence are, in the absence of evidence, presumed to have exercised due care, and that the burden is cast on him who asserts negligence to establish it by a preponderance of the evidence. The presumption applies, not only to a person since deceased, but to a plaintiff and to a defendant as well, when charged with negligence. When evidence or facts and circumstances were adduced respecting the charged negligence of the deceased, the plaintiff, in determining the ultimate fact of such negligence or the want of it, had no more right to have the presumption considered as of evidentiary force or effect and to have it cast on the scales and weighed and considered in connection with proven facts and circumstances bearing on the question than had the defendant when evidence was adduced respecting its charged negligence to have the presumption as to it cast on the scales and considered as of evidentiary force and effect.

The charge considered in the Ryan Case was as follows:

"You are instructed that the instinct of self-preservation and the disposition of men to avoid personal harm re-enforce an inference that a person killed or injured was in the exercise of ordinary care, and that the natural instinct which leads men in their sober senses to avoid injury and preserve life is an element of evidence to be considered in connection with the other testimony in this case."

The charge in that case, as is seen, expressly directed the jury that in determining the care exercised by the deceased, the *presumption was an element of evidence and to be considered in connection with other testimony*. The charge here does not expressly so state nor on its face go to that extent. The question, nevertheless, is as to whether it is open to such a construction and as to whether it may so have been regarded and considered by the jury. The in-

struction, because it omitted to state that, in the absence of evidence or independently of evidence, the presumption was that the deceased exercised due care and did all that prudence required, abstractly is faulty, and for such reason is not to be approved. However, to ascertain whether the charge may or may not have misled the jury in considering and applying it, the natural and obvious meaning of the charge must be looked to, and the charge considered in connection with other portions of the charge and with the evidence bearing on the question of contributory negligence.

The evidence bearing on the question of the care or want of it exercised by the deceased showed an unusual and dense fog obstructing a view of the train as it approached, until, according to some of the testimony, it was from 50 to 75 feet away, and, according to other testimony, 500 to 600 feet or more away; there were no other obstructions; a conflict of evidence as to the manner in which the train was operated as it approached; not anything shown or pointed out that the deceased was familiar with the crossing or of its surroundings; that he and his companion were driving along the highway in the truck to get school children some distance beyond the crossing and who were waiting or lingering along the highway because the regular truck had broken down; the testimony of the fireman, the only witness who saw the deceased and observed his movements just before the collision, who testified that, as the train approached the crossing, he discovered the truck about 125 feet from the track moving towards it, that he then did not see or notice the deceased or his companion in the truck, that he then gave no alarm to the engineer, because he thought the truck would stop before it reached the crossing, that the train was running from 28 to 30 miles an hour, that, as the truck approached within about 25 feet of the track, he saw the curtain of the truck up and a couple of men's faces, and that the truck was not stopping, and then gave the alarm to the engineer when the train was but 25 or 30 feet from the crossing, and that an emergency appli-

cation of the brakes was then made, and all done that then could have been done to stop the train. The fireman did not on this trial testify at what speed the truck was approaching the crossing, nor did he testify in what direction the men in the truck were looking or what they were then doing, other than driving along. All in such respect testified to by him was that he saw "a couple of men's faces" in the truck.

There thus was some evidence, or facts and circumstances, adduced bearing on the conduct of the deceased and the care or the want of it exercised by him as he approached the crossing. Upon substantially the same evidence, we on the prior appeal held that the question of contributory negligence was one for the jury. Upon such evidence and facts and circumstances the jury could have found the deceased guilty of negligence, but were not required to so find. If, upon a consideration of all the facts and circumstances in evidence, the jury were of the opinion that the defendant had not sustained the burden cast upon it of showing negligence on the part of the deceased, or that his negligence, if any, was not a contributing cause of the accident, then the jury were not only at liberty, but it was their duty to find such issue against the defendant.

The court elsewhere in its charge charged the jury that the happening of the accident resulting in the death of the deceased was not evidence of negligence either on the part of the defendant or contributory negligence on the part of the deceased; that the burden of proof was upon the plaintiff to establish by a preponderance of the evidence the negligence charged against the defendant, and that the burden of proving contributory negligence by a preponderance of the evidence was upon the defendant, and, if the evidence with respect to either of such issues was equally balanced, that then the party on whom the burden of proof rested had not established it by a preponderance of the evidence; that, if the deceased, before attempting to cross the track at the time of the accident, failed to look and listen attentively

and carefully for approaching trains, and if by so looking he could have seen, or by so listening could have heard, the train in time to have stopped the automobile truck, and thereby avoided the accident, then the deceased was guilty of negligence barring recovery, though the defendant also was guilty of negligence; that, if the train which hit and killed the deceased was in full view of the deceased before he drove upon the defendant's track, then the law presumed he did not look, or, if he did look, that he did not heed what he saw, and if from the evidence the jury found that the train was in full view of the deceased when he drove on the track, or prior thereto, then the deceased was guilty of negligence and the plaintiff not entitled to recover; that if, because of the fog, the deceased was prevented from seeing the approaching train, it was his duty to listen for an approaching train before driving on the crossing, and, if the jury found from the evidence that he could have heard the approaching train had he listened, then his failure to so listen was negligence which precluded recovery. Thus, when the charge complained of is considered in connection with such other portions of the charge, it is reasonably clear that the natural and obvious meaning conveyed, and intended to be conveyed, by it, was merely that, because of the presumption, the plaintiff was not required in the first instance to affirmatively prove that the deceased had looked or listened for approaching trains, but that the burden was cast on the defendant to show that the deceased was guilty of negligence , and in such particular had failed to so look or listen; and, when all that the court charged on the subject of contributory negligence is considered together it is not reasonably inferrable that the jury may have understood, as the jury expressly were directed and must have understood in the Ryan Case, that in determining the question of contributory negligence the presumption was itself evidence and as such was to be considered.

We also are led to this conclusion, and are controlled, by the cases of *Evans* v. *O. S. L. R. Co.*, 37 Utah 431, 108

P. 638, Ann. Cas. 1912C, 259 and *Davis* v. *D. & R. G. R. Co.*, 45 Utah 1, 142 P. 705. In these cases the court considered an instruction identical with that here complained of. In the Evans Case it was urged as it here is urged that under such an instruction the jury could regard the presumption as of evidentiary force and effect, and consider and weigh it against evidence or facts and circumstances tending to show contributory negligence. This court there held that, if the instruction were open to such a construction, and if the jury could so have considered it, it was erroneous; but held it not open to such a construction, and that such was neither the intended nor the natural effect of the language of it, and that the effect of it was no more than to call the jury's attention to the fact that the burden of proof on the plea of contributory negligence was upon the appellant; and that, unless such negligence was established by a preponderance of the evidence, the respondent must prevail as to that issue.

In the Davis Case this court said that in the Evans Case it had under consideration the identical instruction, and there "held the instruction was not prejudicial to the rights of the appellant in that case, and we can see no difference between that case and this case," and that such an instruction had frequently been upheld by other courts as shown by the cases cited in the Evans Case. The court, however, there further observed that, while the instruction as worded was not "to be approved as a model," still "the court may well inform the jury that, in the absence of evidence to the contrary, a person who was exposed to danger is presumed to have exercised due care for his own safety," and, considering the instruction in connection with other portions of the charge, held it nonprejudicial. In view of such decisions, we see no justification in here reaching a different conclusion.

Complaint also is made of still another portion of the charge. We think the complaint and the reasons urged in

support of it are not well founded. The assignment as to that is thus overruled.

We therefore are of the opinion that, because of the erroneous and prejudicial rulings respecting the cross-examination, the judgment should be reversed and the case again remanded for a new trial. Such is the order. Costs to the appellant.

THURMAN, C. J., and MATHISON, District Judge, concur.

HANSEN, J., being disqualified, did not participate herein.

GIDEON, J.

I concur in the order reversing the judgment. As regards the instruction considered by the court and held to be non-prejudicial, that conclusion is apparently supported by the opinions of this court in *Evans* v. *O. S. L. R. Co.*, 37 Utah 431, 108 P. 638, Ann. Cas. 1912C, 259, and *Davis* v. *D. & R. G. Ry. Co.*, 45 Utah 1, 142 P. 705. I cannot, however, conceive that the instruction, under the facts of this case, is in substance different from the instruction held to be erroneous in *Ryan* v. *U. P. R. R. Co.*, 46 Utah 530, 151 P. 71. It is true that in the Ryan Case the jury were told "that the natural instinct which leads men in their sober senses to avoid injury and preserve life is an element of evidence to be considered in connection with the other testimony in this case," but in what way does that instruction differ from the instruction in the present case that "the presumption is that the deceased did so when he approached the crossing, and the court instructs the jury that the plaintiff need not affirmatively prove that the deceased looked and listened for the train before coming upon the crossing?" That instruction, it seems to me, conveyed to the jury that they had the right and it was their duty to consider the presumption as evidence in determining whether the deceased looked and listened as he aproached the crossing where the acci-

dent happened. However, the nonprejudicial effect of such an instruction seems to be set at rest in this jurisdiction by the opinions in the Evans and Davis Cases, supra.

CHERRY, J. I dissent. In my opinion, the errors referred to were of such slight consequence that they did not affect the substantial rights of the parties. The errors should be disregarded as not prejudicial, and the judgment affirmed.